[Crim. No. 23551. Feb. 1, 1985.]

In re LANCE W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LANCE W., Defendant and Appellant.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Alan H. Simon, Norman Tanaka, Gary M. Mandinach and Susan L. Burrell, Deputy Public Defenders, for Defendant and Appellant.

Frank O. Bell, Jr., State Public Defender, Allan H. Keown and George L. Schraer, Deputy Public Defenders, and James S. Thomson as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow, Cynthia Sonns Waldman and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

Robert H. Philibosian, District Attorney (Los Angeles), Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, and Christopher N. Heard as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**GRODIN, J.**—Proposition 8 on the June 1982 California primary election ballot added section 28, subdivision (d) (hereafter section 28(d)), to article I of the California Constitution. That section provides, inter alia: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . ."

This case requires that we determine the impact of this new constitutional provision upon prior decisions of California courts which mandate the exclusion of evidence obtained in violation of the search and seizure provisions of the federal Constitution (4th Amend.) or the state Constitution (art. I, § 13), under circumstances in which the evidence would be admissible under federal constitutional principles. Specifically, the question is whether a person charged with commission of a criminal offense may insist upon the exclusion of relevant evidence at trial on the ground that the evidence was seized in violation of article I, section 13, or was seized in violation of the right of *another person* to be free of unreasonable search and seizure under either constitutional provision. Under federal constitutional principles as currently enunciated by the United States Supreme Court such evidence would be admissible if the seizure did not violate the Fourth Amendment. However, under decisions of this court which recognize the independent and more exacting standards of article I, section 13 (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099]), and accord standing to object to admission of evidence seized in violation of the rights of a third party (*People* v. *Martin* (1955) 45 Cal.2d 755 [290 P.2d 855], reaffirmed in *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 156 [98 Cal.Rptr. 649, 491 P.2d 1]), the evidence would be excluded. The question to be decided is whether either our vicarious exclusionary rule or article I, section 13, survives Proposition 8 as a basis for exclusion of evidence.

The members of this court have diverse views regarding the importance and proper scope of the exclusionary rule as it has developed over the years. Faced with a constitutional amendment adopted by initiative, however, we are obliged to set aside our personal philosophies and to give effect to the expression of popular will, as best we can ascertain it, within the framework of overriding constitutional guarantees. Approaching Proposition 8 in that spirit, we conclude that Proposition 8 has abrogated both the "vicarious exclusionary rule" under which a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person, and a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution.

## I.

On November 2, 1982, plainclothed officers observed Lance W., who was then 16 years of age, approach several vehicles in a park in which drug sales were believed to be occurring. He appeared to transfer something between himself and the drivers of two of the vehicles. He removed something from his waistband and handed it to the occupant of a third vehicle, receiving something in exchange. When Lance approached the officers' vehicle, one officer asked him if he knew where to get some "smoke." Lance, who appeared to be nervous, replied "no," and then walked to a pickup truck where he dropped a plastic baggie into the open window on the driver's side.

The two officers walked to the truck, opened the door, and removed the baggie which was found to contain marijuana. The truck was occupied by two persons, neither of whom gave permission to open the door of the truck or to remove the baggie. Lance was arrested. A search of his person revealed a second baggie of marijuana and $35. Lance stated, referring to the persons in the truck: "They've got marijuana, too," and "Hey, I'm just trying to make a living. I've been kicked out of the house. I'm living on my own."

A petition was filed in the juvenile court alleging that Lance was a person coming within Welfare and Institutions Code section 602[1] in that he had violated Health and Safety Code section 11359, possession of marijuana for sale. It was further alleged that previous juvenile court dispositions had been ineffective in rehabilitating Lance within the meaning of sections 777 and 726. At the hearing on appellant's motion to suppress the physical evidence and his statements as products of a warrantless search undertaken without probable cause, the trial court, relying on *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11], concluded that the officers' observations of the exchange of baggies between Lance and the occupants of the vehicles did not establish probable cause for a search of the pickup truck, or for an arrest and search of Lance. Therefore, the court reasoned, suppression of the evidence was required unless section 28(d) abrogated the rule under which Lance had standing to object to the unlawful search of the pickup truck. Concluding that section 28(d) eliminated any independent state ground for suppression of the evidence, and that Lance lacked standing to object to a violation of the Fourth Amendment rights of the occupants of the pickup truck, the court denied the motion to suppress.

---

[1]All future statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Lance then submitted the matter on the evidence received at the hearing on the suppression motion with additional testimony, stipulating that the content of the baggie was marijuana. The court sustained the allegations of the petition, found that prior dispositions had been ineffective, and ruled that the maximum confinement time for the violation would be three years.

Prior to the disposition hearing, Lance admitted the allegations of a second petition which alleged that he had violated Penal Code section 242, by committing battery, a misdemeanor. At the disposition hearing for both petitions, held on April 8, 1983, the court ordered that Lance continue as a ward of the court. Custody was removed from his parents and given to the probation officer with an order for placement in a camp-community placement program. Maximum confinement time was fixed at three years and two months, with credit for thirty-one days of predisposition confinement. In addition, concurrent "terms" of three years were ordered reflecting the statutory confinement time authorized for offenses Lance had been found to have committed after hearings on two prior sustained petitions. Finally the court ordered that upon release from camp placement, Lance be confined in juvenile hall for 30 days, but suspended service of that time on condition that he obey all orders of the probation officer.

Appellant contends that the court erred: (1) in concluding that section 28(d) abrogated the vicarious exclusionary rule established in *People* v. *Martin, supra,* 45 Cal.2d 755, and applied to both Fourth Amendment and article I, section 13 violations; and (2) in imposing the suspended 30 days of juvenile hall confinement time, an order made pursuant to the authority of *In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291].

## II.

### "Standing" to Seek Suppression of Unlawfully Seized Evidence

The Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution extend similar protection against "unreasonable searches and seizures." ■ The federal exclusionary rule, pursuant to which both federal and state courts must exclude evidence seized in violation of the Fourth and Fourteenth Amendments, although once described as an essential part of the constitutional guarantee (*Mapp* v. *Ohio* (1960) 367 U.S. 643, 657 [6 L.Ed.2d 1081, 1091, 81 S.Ct. 1684, 84 A.L.R.2d 933]), has more recently been described by the United States Supreme Court as "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.'" (*United States* v. *Leon* (1984) — U.S. —, — [82 L.Ed.2d 677, 687, 104 S.Ct. 3405], quoting

*United States* v. *Calandra* (1974) 414 U.S. 338, 348 [38 L.Ed.2d 561, 571, 94 S.Ct. 613].) Therefore, although state application of the exclusionary rule in criminal trials is essential to ensure that the guarantee of the Fourth Amendment is not an empty promise (*Mapp* v. *Ohio, supra,* 367 U.S. 643, 660 [6 L.Ed.2d 1081, 1093]), the circumstances to which the federal exclusionary rule must be applied as a sanction in order to deter future unlawful conduct by police or other state agents are defined by the United States Supreme Court.

■ The Supreme Court has held that the deterrent purpose of the exclusionary rule does not require its application when unlawfully seized evidence is offered against a defendant whose own rights have not been compromised by the unlawful seizure. "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons. As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. The balancing process implicit in this approach is expressed in the contours of the standing requirement. Thus, standing to invoke the exclusionary rule has been confined to situations where the government seeks to use such evidence to incriminate the victim of the unlawful search. *Brown* v. *United States,* 411 U.S. 223 (1973) [36 L.Ed.2d 208, 93 S.Ct. 1565]; *Alderman* v. *United States,* 394 U.S. 165 (1969) [22 L.Ed.2d 176, 89 S.Ct. 961]; *Wong Sun* v. *United States, supra* [371 U.S. 471 (9 L.Ed.2d 441, 83 S.Ct. 407)]; *Jones* v. *United States,* 362 U.S. 257 (1960) [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233]. This standing rule is premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." (*United States* v. *Calandra, supra,* 414 U.S. 338, 348 [38 L.Ed.2d 561, 571-572].)

Reaffirming its belief that invasion of the defendant's personal right is necessary to accord standing to invoke the Fourth Amendment exclusionary rule, the court explained in *Rakas* v. *Illinois* (1978) 439 U.S. 128, 137 [58 L.Ed.2d 387, 397, 99 S.Ct. 421]: "Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected." In *Rakas* the court also emphasized that the issue is not really one of standing, but, because rights secured by the Fourth Amendment are personal, whether the defendant's rights have been invaded. "[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn

requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. . . . [T]his aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing. . . .'' (439 U.S. at p. 140 [58 L.Ed.2d at p. 399]; see also, *United States* v. *Salvucci* (1980) 448 U.S. 83 [65 L.Ed.2d 619, 100 S.Ct. 2547]; *Rawlings* v. *Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633, 100 S.Ct. 2556]; *United States* v. *Payner* (1980) 447 U.S. 727 [65 L.Ed.2d 468, 100 S.Ct. 2439].)

Although the United States Supreme Court has concluded that the deterrent purpose of the exclusionary rule was adequately served through a limited application to searches which invaded the defendant's personal right, a broader application of the rule has been thought necessary in this state both to deter unlawful police conduct and to preserve the integrity of the judicial process. Even before *Mapp* made the exclusionary rule mandatory in state courts, this court reasoned that exclusion of evidence obtained in violation of state and federal constitutional guarantees was a necessary, judicially declared, rule of evidence ''because other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activities of law enforcement officers.'' (*People* v. *Cahan* (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].) We noted in *Cahan* that because we were adopting the exclusionary rule as a rule of evidence, we were not bound in its application by decisions applying the federal rule (*id.,* at p. 450), and later in the same year held that because the California exclusionary rule served a broader purpose than the rule then applied in the federal courts it was ''applicable whenever evidence is obtained in violation of constitutional guarantees, . . . whether or not it was obtained in violation of the particular defendant's constitutional rights.'' (*People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].)

In adopting this vicarious exclusionary rule in *Martin,* we explained again that exclusion of unlawfully seized evidence was necessary both because other remedies had been ineffective in deterring unlawful police conduct, and because admission of the evidence involved the court in an implied condonation of that conduct. ''This result occurs whenever the government is allowed to profit by its own wrong by basing a conviction on illegally obtained evidence, and if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a limitation virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for

the conviction of others by the use of the evidence illegally obtained against them." (*Id.*, at p. 760.)

Thereafter, this judicially created rule of evidence was applied by this court to evidence seized in violation of either the Fourth Amendment or article I, section 13 (formerly § 19) of the California Constitution. (See *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 157; *People* v. *Brisendine, supra,* 13 Cal.3d 528, 549 ["Our vicarious exclusionary rule has never been required under the Fourth Amendment (see *Alderman* v. *United States* (1969) 394 U.S. 165, 171-176 [22 L.Ed.2d 176, 185-188, 89 S.Ct. 961]) but has been a continuing feature of California law under our ability to impose higher standards for searches and seizures than compelled by the federal Constitution"].)

## III.

### Section 28(d)

The full text of section 28(d) states: *"Right to Truth-in-Evidence.* Except as provided by statute hereafter enacted by a two thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and postconviction motions and hearings, or in any trial or hearing of a juvenile court for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code sections 352, 782, or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

Appellant disputes the argument made by the People that section 28(d) now mandates admission of unlawfully seized evidence unless exclusion is required by the Fourth Amendment exclusionary rule as defined by the United States Supreme Court. He correctly observes that Proposition 8 did not repeal either section 13 of article I,[2] or section 24[3] of that article, and on that basis reasons that section 13 remains as an independent state ground for exclusion of unlawfully seized evidence. In addition, and apart from that basis for exclusion of the evidence, he argues that it was not the intent of the electorate to abrogate the vicarious exclusionary rule enunciated in *Peo-*

---

[2]Section 13: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

[3]Section 24: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

*ple* v. *Martin, supra,* 45 Cal.2d 755. The *Martin* rule, he argues, is a rule of procedure dealing with admissibility of evidence and thus is unaffected by the adoption of section 28(d).

The State Public Defender, appearing as amicus curiae in support of appellant, argues in addition that section 28(d) is unconstitutional in that it requires admission of unlawfully seized evidence which the Fourth Amendment as interpreted by the United States Supreme Court mandates be excluded;[4] and that section 28(d) constitutes an impermissible constitutional revision, rather than amendment, because it abrogates the judicial function of fashioning appropriate remedies for violation of constitutional rights. Amicus curiae California Attorneys for Criminal Justice endorses all of these propositions and offers a further basis for finding section 28(d) invalid, asserting that it denies equal protection to criminal defendants who now may not seek suppression of unlawfully obtained evidence on the same basis as parties to civil litigation. Finally, this organization argues that the reenactment of Penal Code section 1538.5 by the Legislature subsequent to the adoption by the people of section 28(d) served to reinstate the vicarious standing rule as an existing statutory rule of evidence unaffected by section 28(d).[5] Consideration of the merits of any of these claims involves as a necessary first step a determination of the meaning of section 28(d) as it affects evidence seized in violation of the Fourth Amendment and article I, section 13.

a. ▉ *Does section 28(d) abrogate the California exclusionary rule and violation of article I, section 13, as bases upon which California courts may exclude unlawfully seized evidence?*

Appellant claims there is no evidence that in adopting section 28(d) the electorate intended to affect the vicarious exclusionary rule in any way, basing his argument on the failure of either the ballot measure itself or the materials in the ballot pamphlet sent to the voters by the Secretary of State to make reference to either the vicarious exclusionary rule or state search and seizure law in general. We do not find the omission dispositive. Although there may be doubt as to the proper construction and scope of ap-

---

[4]The question of whether section 28(d) mandates admission of evidence obtained in violation of other constitutional guarantees is not presented by this appeal and we do not, therefore, address amicus' further assertion that evidence obtained in violation of a defendant's Sixth Amendment right to counsel must be admitted under the mandate of section 28(d).

[5]Appellant has also argued that Evidence Code section 352 affords an additional ground for suppression of evidence that is the product of police "overreaching." He did not, however, seek suppression of the evidence seized in the pickup truck on this ground in the trial court.

plication of section 28(d) in other contexts,[6] we find no uncertainty with regard to its application to unlawfully seized evidence.

We begin, as we must, with the express, unambiguous language of section 28(d): "[R]elevant evidence shall not be excluded in any criminal proceeding." This clearly stated command has only one apparent meaning. It is impossible to reconcile this language in section 28(d) with the construction for which appellant and amici argue. "Relevant evidence shall not be excluded" simply does not mean "relevant evidence shall not be excluded unless it was seized in violation of article I, section 13." That gloss will not adhere to the unambiguous command of section 28(d).

Appellant does not suggest that the language in question is ambiguous, or that we may go behind the express terms of the provision in search of legislative intent in order to construe it on that basis. ■ "It is a settled principle in California law that 'When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)." (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) They seek instead to invoke the equally settled rule that creates a presumption against implied repeal and places an obligation on courts to reconcile conflicts between statutes and constitutional provisions to avoid implying that a later enacted provision repeals another existing statutory or constitutional provision. (See *In re Thierry S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610].) The premise underlying this argument is that if section 28(d) mandates admission of evidence seized in violation of article I, section 13, it is a *pro tanto* repeal of article I, section 13, and article I, section 24.

We agree that Proposition 8 did not repeal either section 13 or section 24 of article I. The substantive scope of both provisions remains unaffected by Proposition 8. What would have been an unlawful search or seizure in this state before the passage of that initiative would be unlawful today, and this is so even if it would pass muster under the federal Constitution. ■ What Proposition 8 does is to eliminate a judicially created *remedy* for

---

[6]The impact of section 28(d) on the vicarious exclusionary rule and article I, section 13, of the California Constitution is only one of several questions requiring construction of the section to reach this court for resolution. (See, e.g., *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149]; *People* v. *Castro*, Crim. 23605, hg. granted Mar. 22, 1984; *Ramona R.* v. *Superior Court* (1985) *ante*, p. 802 [210 Cal.Rptr. 204, 693 P.2d 789].)

The Assembly Committee on Criminal Justice, in a report analyzing the provisions of Proposition 8 described section 28(d) as "the most ambiguous and least understood section of Proposition 8." (Assem. Com. on Crim. Justice, Analysis of Prop. 8, Mar. 24, 1982, p. 10.)

violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled.

The dissent correctly observes that this court has long considered the exclusionary rule to be the only effective means of deterring police misconduct in violation of the search and seizure provisions of the federal or state Constitutions. (*People* v. *Cahan, supra,* 44 Cal.2d 434, 447.) We have described the rule as being "required in order to give substance to the rights conferred" by those provisions (*People* v. *Reeves* (1964) 61 Cal.2d 268, 275 [38 Cal.Rptr. 1, 391 P.2d 393]), and the vicarious exclusionary rule as a "necessary adjunct" to it. (*Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 161.) The fact remains, however, that both rules are of judicial creation, and relate to remedy rather than the scope of substantive rights protected by either Constitution. The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing those rights, except as required by the Constitution of the United States. Whether they are wise in that decision is not for our determination; it is enough that they have made their intent clear.

■ Even if the presumption against implied repeal were applicable here it would not carry appellant's day, for that presumption contemplates that "the courts are bound to maintain the integrity of both [enactments] if they may stand together." (*Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].) The general rule is that courts assume from a new enactment a purpose to change existing law. (*Union League Club* v. *Johnson* (1941) 18 Cal.2d 275, 278 [115 P.2d 425]; *People* v. *Weitzel* (1927) 201 Cal. 116, 118-119 [255 P. 792, 52 A.L.R. 811].) Neither appellant nor our dissenting colleagues offers a plausible interpretation of section 28(d) that would avoid the obvious import of its language.[7] They offer no theory for maintaining the integrity of section 28(d); they would simply read it out of the initiative, as if it did not exist. But section 28(d) is now part of the Constitution of the State of California, and cannot be ignored.
■ Moreover, not only the language of that section but also accepted canons of statutory construction and available "legislative" history confirm our conclusion that the electorate intended to mandate admission of relevant

---

[7]Whether or to what extent Proposition 8 entails a broader sweep is not a question we need decide here. It seems curious, however, that our dissenting colleagues would suggest that our interpretation of section 28(d) leads to "absurd results manifestly counter to the stated purposes of Proposition 8," namely the admission of evidence that the *prosecutor* would like to have excluded. If Proposition 8 has that effect, it is surely attributable to the language used by the drafters, and not to our interpretation in this case. Moreover, the dissenting opinion fails to offer any interpretation that would avoid the results which it characterizes as "absurd."

evidence, even if unlawfully seized, to the extent admission of the evidence is permitted by the United States Constitution.

■ ■■■ That understanding and intent may be found in the ballot pamphlet for the June 8, 1982, Primary Election in which section 28(d) appears as part of Proposition 8, the Criminal Justice Initiative.[8] The Legislative Analyst there advised the voter: "Under current law, certain evidence is not permitted to be presented in a criminal trial or hearing. For example, evidence obtained through unlawful eavesdropping or wiretapping, or through unlawful searches of persons or property, cannot be used in court. This measure generally would allow most relevant evidence to be presented in criminal cases, subject to such exceptions as the Legislature may in the future enact by a two-thirds vote. The measure could not affect federal restrictions on the use of evidence."

The explicit language of section 28(d) providing that "relevant evidence shall not be excluded in any criminal proceeding" with limited, enumerated, exceptions to that command, coupled with the explanation of the Legislative Analyst that unlawfully seized evidence would become admissible except to the extent that the federal Constitution forbids its use, supports the People's argument that in the absence of express statutory authority therefor courts may not exclude evidence seized in violation of either the state or federal Constitution unless exclusion is compelled by the federal Constitution. The inclusion in section 28(d) of specified exceptions to its mandate that "relevant evidence shall not be excluded"—i.e., later enacted statutes passed by two-thirds of the Legislature; statutory rules relating to privilege or hearsay; and sections 352, 782, and 1103 of the Evidence Code—affords further evidence of the intent to restrict exceptions to that command. ■ "Under the familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].)

■ Implicit in the limitation on the courts' power to exclude relevant evidence to the enumerated statutory exceptions is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion

---

[8]Ballot summaries and arguments are accepted sources from which to ascertain the voters' intent and understanding of initiative measures. (*Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 673, fn. 14 [194 Cal.Rptr. 781, 669 P.2d 17]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281].)

of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment.[9]

■ In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration. (Code Civ. Proc., § 1859; *Winchester* v. *Mabury* (1898) 122 Cal. 522, 527 [55 P. 393]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049].) "[W]e are mindful that the goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated." (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) ■ The express intent of section 28(d) is to ensure that all relevant evidence be admitted. That purpose cannot be effectuated if the judiciary is free to adopt exclusionary rules that are not authorized by statute or mandated by the Constitution.

Appellant contends, however, that because section 28(d) repeats language found in section 351 of the Evidence Code, which provides that "[e]xcept as otherwise provided by statute, all relevant evidence is admissible," the same meaning must be attached to section 28(d) as had been ascribed to section 351. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr. 455, 617 P.2d 1087]; *Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376].) They note that in *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, this court held that in enacting section 351 as part of the Evidence Code the Legislature did not intend to repeal or otherwise affect the vicarious exclusionary rule or the power of the court to fashion such rules to implement constitutional rights. (6 Cal.3d at pp. 160-161.)

---

[9]The ballot arguments, both those for and those against Proposition 8, while not making reference to the vicarious exclusionary rule, or suppression of evidence seized in violation of article I, section 13, are consistent with this construction of section 28(d), and support a conclusion that this was the intent of the electorate in adopting the provision.

Various ballot arguments thus advised the voter: "For too long our courts . . . have demonstrated more concern with the rights of criminals than with the rights of innocent victims." "[H]igher courts of this state have created additional rights for the criminally accused and placed more restrictions on law enforcement officers. This proposition will overcome some of the adverse decisions by our higher courts." "Proposition 8: . . . Condones the use of wiretapping and seizure of your telephone and credit records without a warrant. [¶] Permits spying on you in a public restroom." (Arguments in favor of Prop. 8 and rebuttal to argument in favor of Prop. 8, Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982) pp. 34-35.)

The vicarious exclusionary rule, and exclusion of evidence seized in violation of article I, section 13, which would not have been excludable under the Fourth Amendment alone, did create rights for criminal defendants beyond those compelled by the Fourth Amendment. By necessary implication the argument that the proposition would permit spying and use of unlawfully seized evidence suggests that because such evidence would become admissible in criminal proceedings, the exclusionary rule would no longer act as a deterrent to this unlawful police conduct.

This rule of construction is applicable, however, only in the absence of evidence of a contrary legislative or popular intent. (*Legislature* v. *Deukmejian, supra,* 34 Cal.3d 658, 672.) In *Kaplan* we concluded not only that there was no evidence of an intent to abrogate the vicarious exclusionary rule, but there was legislative history found in the report of the Law Revision Commission which drafted and submitted the new code to the Legislature supporting a conclusion that the Legislature contemplated that courts would continue to define the scope of exclusionary rules compelled by constitutional principles. In addition, while recognizing the origin of the vicarious exclusionary rule as a judicially declared rule of evidence, we reasoned that the rule had since become one that was mandated by both the federal and state Constitutions. (*Id.,* at p. 161.) We have since been disabused of the belief that the rule is compelled by the Fourth Amendment. (See *Rakas* v. *Illinois, supra,* 439 U.S. 128, 133-134 [58 L.Ed.2d 387, 394].) And, as has been discussed above, we find persuasive evidence that the electorate, in adopting section 28(d), did intend to change the law in this regard.[10]

 Our conclusion that section 28(d) was intended to permit exclusion of relevant, but unlawfully obtained evidence, only if exclusion is required by the *United States Constitution* renders unnecessary extended consideration of the argument that the provision is invalid because it conflicts with the federal Constitution.[11] Even were there some question in this regard, however, invalidation of section 28(d) would not be appropriate since the express intent of the electorate was that it apply to any situation in which it is constitutionally permissible.[12] "[A] statute which has unconstitutional applications may nevertheless be effective in those instances where the Constitution is not offended." (*Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 543 [50 Cal.Rptr. 881, 413 P.2d 825].)

---

[10]In addition to the ballot summary and arguments noted above, such intent is reflected in the preamble to the initiative, section 28(a) which states in the final paragraph that "broad reforms in the procedural treatment of accused persons" are necessary to achieve the goals of the proposition.

[11]Even in the absence of the Legislative Analyst's advice that section 28(d) could not affect federal restrictions on the use of evidence, the electorate would be deemed to know of the superseding impact of federal constitutional provisions on state laws or constitutional provisions which conflict with and restrict rights guaranteed by the United States Constitution. The adopting body is presumed to be aware of existing laws and judicial construction thereof (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394]) and to have intended that its enactments be constitutionally valid. (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) We would, therefore, be compelled to "adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality." (*Ibid.*)

[12]Section 10 of Proposition 8 declared this intent: "*If any section,* party, clause, or phrase of this measure *or the application thereof to any* person or *circumstances is held invalid, such invalidity shall not affect other* provisions or *applications* of the measure *which can be given effect* without the invalid provision or application, and to this end the provisions of this measure are severable." (Italics added.)

b. *Constitutional amendment or revision?*

Nor are we persuaded that section 28(d) may reasonably be characterized as a constitutional revision which may be proposed only by delegates to a constitutional convention. (Cal. Const., art. XVIII, § 2; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 222.) We have heretofore rejected a similar attack on Proposition 8 in its entirety. (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 260-261 [186 Cal.Rptr. 30, 651 P.2d 274].) Our decision there necessarily encompassed a conclusion that section 28(d) was properly adopted through the amendment procedure and we see no reason to depart from that conclusion. The restriction on judicial authority to fashion nonstatutory rules of evidence or procedure governing admission of unlawfully seized evidence does not, either qualitatively or quantitatively, "accomplish such far reaching changes in the nature of [judicial authority] as to amount to a revision" of the Constitution. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 223.)

The Legislature and, a fortiori, the people acting through either the reserved power of statutory initiative or the power to initiate and adopt constitutional amendments (art. II, § 8) may prescribe rules of procedure and of evidence to be followed in the courts of this state. "[I]t has been decided by this court in a long and consistent line of cases that 'the procedure by which the jurisdiction of [the superior] courts is to be exercised may be prescribed by the legislature, and that the statutory regulation thereof will be upheld unless such regulations should be found to substantially impair the constitutional powers of the courts or practically defeat their exercise.' (*Ex parte Harker* [1875] 49 Cal. 465.)" (*Sacramento etc. D. Dist.* v. *Superior Court* (1925) 196 Cal. 414, 432 [238 P. 687]; see also *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 731 [192 P.2d 916] [Legislature may constitutionally limit procedures invoking or substituting remedies].) That the authority of the judicial branch of government is subject to legislative enactment of rules of procedure is implicit in article VI, section 6 of the California Constitution which empowers the Judicial Council to "adopt rules for court administration, practice and procedure, not inconsistent with statute."

Rules of evidence may also be prescribed by the Legislature without compromising the authority of the judicial branch of government. Concurring in the court's opinion in *People* v. *Buckely* (1904) 143 Cal. 375, 393 [77 P. 169], Chief Justice Beatty observed that "[t]he power of the Legislature to determine what is or is not competent evidence in civil or criminal cases is unquestionable." The court confirmed this proposition in *People* v. *Johnson* (1968) 68 Cal.2d 646, 657 [68 Cal.Rptr. 599, 441 P.2d 111],

emphasizing, however, that the power "remains subject to the restrictions placed upon it by the state and federal Constitutions." (*Id.*, at pp. 657-658.) The people could by amendment of the Constitution repeal section 13 of article I in its entirety. ■■■ The adoption of section 28(d) which affects only one incident of that guarantee of freedom from unlawful search and seizure, a judicially created remedy for violation of the guarantee, cannot be considered such a sweeping change either in the distribution of powers made in the organic document or in the powers which it vests in the judicial branch as to constitute a revision of the Constitution within the contemplation of article XVIII.

### c. *Equal protection.*

■■■ The argument by amicus that criminal defendants are denied equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and article I, section 7, of the California Constitution because they may not, while parties to civil litigation may, seek exclusion of unlawfully seized evidence similarly lacks merit.

The basic premise of the argument, that civil litigants may take advantage of exclusionary rules that are unavailable to criminal defendants in the wake of section 28(d), assumes the applicability of the exclusionary rule to civil proceedings. That assumption is not supported by precedent in this state which to date has extended the rule only to proceedings so closely identified with the aims of criminal prosecution as to be deemed "quasi-criminal." (See *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 96-97 [41 Cal.Rptr. 290, 396 P.2d 706] ["[I]t is apparent that the purpose of the forfeiture is deterrent in nature and that there is a close identity to the aims and objectives of criminal law enforcement"]; *People* v. *Moore* (1968) 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800] ["Whatever the label that may be attached to [narcotic addict] proceedings, it is apparent that there is a close identity to the aims and objectives of criminal law enforcement . . . and we are satisfied that to hold unconstitutionally obtained evidence admissible in the proceedings would furnish an incentive to violate the Fourth and Fourteenth Amendments]; compare *Emslie* v. *State Bar* (1974) 11 Cal.3d 210 [113 Cal.Rptr. 175, 520 P.2d 991] [declining to extend exclusionary rule to State Bar proceedings] and *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] [exclusionary rule not applicable in parole revocation proceedings].) *People* v. *Myers* (1972) 6 Cal.3d 811 [100 Cal.Rptr. 612, 494 P.2d 684], on which amicus relies, is not in point. It holds only that an outpatient of the California Rehabilitation Center retains his right against unlawful search and seizure notwithstanding his status.

Moreover, even if there may be civil proceedings in which the circumstances under which evidence was obtained suggest that the purposes of the exclusionary rule warrant its application, criminal defendants are not thereby denied equal protection. It is constitutionally permissible for the electorate to determine that the public stake in criminal proceedings, and in assuring that all evidence relevant to the guilt of the accused be presented to the trier of fact, justifies the admission of evidence that would be excluded in other proceedings.

IV.

Reenactment of Penal Code Section 1538.5

Subdivision (a) of Penal Code section 1538.5 provides that a defendant in a criminal prosecution may seek suppression of evidence obtained in a search or seizure in violation of state constitutional standards.[13] Section 28(d) abrogated this authority for exclusion of evidence obtained in violation of article I, section 13. Subsequent to the adoption of section 28(d) at the June 8, 1982, election, however, the Legislature twice enacted amendments to section 1538.5. Amicus curiae Attorneys for Criminal Justice contends that the second amendment which became chapter 1505 of the 1982 Statutes (Stats. 1982, ch. 1505, § 6, p. 5843) reestablished violation of article I, section 13, as a basis for exclusion of evidence.

This argument is grounded upon the introductory proviso to section 28(d): "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature." The second amendment qualifies as an "enactment" under the proviso, amicus argues, because of article IV, section 9, of the California Constitution. That section states in relevant part: "A section of a statute may not be amended unless the section is re-enacted as amended." The unamended portion of section 1538.5, amicus reasons, was reenacted as it was originally adopted in 1967 (Stats. 1967, ch. 1537, § 1, p. 3652) and applied prior to the adoption of section 28(d).

The first obstacle to acceptance of that proposition is realization that chapter 1505 was unanimously adopted by the Legislature as part of a bill

---

[13]Subdivision (a) of section 1538.5: "A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds:

"(1) The search or seizure without a warrant was unreasonable.

"(2) The search or seizure with a warrant was unreasonable because (i) the warrant is insufficient on its face; (ii) the property or evidence obtained is not that described in the warrant; (iii) there was not probable cause for the issuance of the warrant; (iv) the method of execution of the warrant violated federal or state constitutional standards; (v) there was any other violation of federal or state constitutional standards."

amending several sections of the Penal Code. The only mention of section 1538.5 in its summary of that measure by the Senate Judiciary Committee was a reference to the amendment as a noncontroversial "clean-up" amendment.[14] We cannot assume that the Legislature understood or intended that such far-reaching consequences—virtually a legislative repeal of the "Truth-in-Evidence" section of Proposition 8—would follow an amendment so casually proposed and adopted without opposition.

Acceptance of amicus' reasoning would also require that we give no effect to the intervening, post-Proposition 8 amendment of section 1538.5 by chapter 625 of the 1982 Statutes. Chapter 625 had not been "enacted" when the Senate and Assembly bills which became chapter 1505 were passed on August 18 and 24, 1982, since chapter 625 had not then been signed by the Governor. (*In re Thierry S., supra,* 19 Cal.3d 727, 738-739.) However, Senate Bill No. 1744 which became chapter 625, had been passed and enrolled, and on August 11, 1982, had been presented to the Governor,[15] who signed it on August 27, 1982. Assembly Bill No. 2984, which became chapter 1505, included a provision that it was not to go into effect unless Senate Bill No. 1744 was approved and chaptered first. Not only did this occur, but, as chapter 625, Senate Bill No. 1744 became effective on August 27, 1982, the day that Assembly Bill No. 2984 was enrolled and presented to the Governor,[16] while chapter 1505 was not enacted until the following day when the Governor signed Assembly Bill No. 2984.

Chapter 625 was an urgency measure which became effective upon signing. The bill included both a declaration, in section 2, that the amendment of section 1538.5 did "not create any new grounds for exclusion of evidence that did not exist prior to this act. The Legislature intended that the changes made by this act are procedural only." The urgency clause, section 3, also stated that urgency was necessary so that "procedures relating to motions to suppress evidence may be made more uniform and economical as soon as possible." (Stats. 1982, ch. 625, §§ 2, 3, p. 2627.) Neither chapter 625, nor chapter 1505, made any changes in subdivision (a) of section 1538.5, and the changes made by those chapters were, indisputably, "procedural only."[17]

---

[14]The Senate Committee on the Judiciary in its summary of Assembly Bill No. 2984 referred to section 1538.5 only in its closing paragraph, there stating: "The bill would also amend Sections 871.5 and 1538.5 of the Penal Code. The amendments are clean-up amendments to two other bills, SBs 1743 and 1744, which are pending on the Assembly floor on the consent calendar. The amendments are not controversial."

[15]7 Senate Journal (1982 Reg. Sess.) page 13252.

[16]10 Assembly Journal (1982 Reg. Sess.) pages 18065-18066.

[17]Chapter 625 amended or rewrote subdivision (f) of section 1538.5 to limit municipal and justice court motions to suppress evidence in felony prosecutions to evidence sought to be introduced by the People at a preliminary hearing. It also amended subdivision (j) to

Government Code section 9605 establishes a statutory rule for interpreting legislative intent when a statute is amended (*In re Thierry S., supra,* 19 Cal.3d 727, 745, fn. 17). That section specifies: "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The *portions which are not altered are to be considered as having been the law from the time they were enacted*; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment." (Italics added.) We do not agree that the section is inapplicable here or that it would be inconsistent with article IV, section 9, to apply it to the above sequence of events. The Legislature adopted section 9605 to ensure that the intent of the Legislature would be carried out, consistent with article IV, section 9, whenever statutes are amended.

Amicus argues that since article IV, section 9, requires reenactment, the only effect of section 9605 is to avoid an implied repeal and reenactment of unchanged portions of an amended statute, ensuring that the unchanged portion operates without interruption. We agree that section 9605 has this effect. We do not agree, however, that the impact of section 9605 was to revive subdivision (a) of section 1538.5 and continue its operation as it had been construed and applied prior to the adoption of Proposition 8. Amicus assumes that because chapter 1505 included none of the indicia of legislative intent that had been included in chapter 625, and subdivision (a) of the reenacted section 1538.5 continues to recognize violation of state constitutional standards as a basis for suppression of evidence, that subdivision has been reenacted without the limitations created by section 28(d). That cannot be. As noted earlier, subdivision (a) of section 1538.5 was reenacted on August 27, 1982, when the Governor approved Senate Bill No. 1744. Senate Bill No. 1744 was not intended to, and did not, restore the pre-Proposition 8 law relative to admission of unlawfully obtained evidence. Assembly Bill No. 2984 or chapter 1505 was enacted on August 28, 1982, and became effective January 1, 1983. It "reenacted" not the law as it was before Proposition 8, but the law as it was on August 27, 1982, the date of the most recent prior amendment and "reenactment" of the section by chapter 625.[18]

---

authorize review of an order suppressing evidence and dismissing a felony complaint by a motion to reinstate the complaint pursuant to section 871.5, and added reference to that section in subdivisions (d), (e), (*l*), and (n) of section 1538.5. Chapter 1505 added a reference to section 871.5 to subdivision (m) of section 1538.5; changed the word "Sections" to "Section" in subdivision (b) of section 1538.5; and changed "motion" to "a motion" in item (v) of subdivision (n) of section 1538.5.

[18]Neither article IV, section 9, nor Government Code section 9605, contemplates reenactment of the unchanged portions of an amended statute in the form of its original enactment if there have been intervening amendments of those portions. The clear intent of Government Code section 9605 is to codify the rule that the unchanged portions of the newly amended

The law which continued without interruption pursuant to Government Code section 9605, and was reenacted by chapter 1505 pursuant to article IV, section 9, was section 1538.5 as limited by the impact of section 28(d).

■ We conclude that the amendments to section 1538.5 adopted by the Legislature in 1982 had neither the intent nor effect of reviving exclusionary rules abrogated by Proposition 8. Therefore, although section 1538.5 continues to provide the exclusive procedure by which a defendant may seek suppression of evidence obtained in a search or seizure that violates "state constitutional standards," a court may exclude the evidence on that basis only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment.

V.

Disposition

■ The disposition ordered by the juvenile court in this case removed appellant from the physical custody of his parents, placed him in the custody of the probation officer, ordered that he be confined in a camp under the county's camp-community placement program, and imposed a 30-day period of confinement in the juvenile hall upon his release from camp as a condition of probation. The time to be served in juvenile hall was stayed until the date of the court's next annual review of appellant's progress.

Appellant contends that the imposition of time in juvenile hall in addition to camp placement exceeds the authority of the juvenile court. He argues that the disposition was a "dual disposition" that is not authorized by the Juvenile Court Law which permits commitment to juvenile hall only as an alternative to a disposition removing a ward from his home; is a device by which he could be removed from the custody of his parents again after release from camp without the procedural formality and findings required

---

statute be "reenacted" as they existed immediately prior to the amendment. (See *Estate of Childs* (1941) 18 Cal.2d 237, 245 [115 P.2d 432, 136 A.L.R. 333].)

Assembly Bill No. 2984, which became chapter 1505 included a provision that it was not to go into effect unless Senate Bill No. 1744 (ch. 625) was approved and chaptered first. In these circumstances a reading of Government Code section 9605 or article IV, section 9, as causing chapter 1505 to "reenact" section 1538.5 as if chapter 625 had not been an intervening amendment would be contrary to the purpose of the Constitution, Government Code section 9605, and the clearly expressed intent of the Legislature. The conclusion that the Legislature did not intend to reinstate independent state grounds for excluding unlawfully seized evidence is inescapable.

by section 777;[19] and is an abuse of discretion since, having already been confined for 31 days in juvenile hall prior to this disposition the additional time after camp placement cannot reasonably be believed to have a therapeutic affect.

We conclude that the order is proper and find no abuse of discretion.

In *In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291], the Court of Appeal held that section 730[20] authorizes a juvenile court to order confinement of a ward in juvenile hall as a condition of probation. "[T]he condition of probation imposed by the juvenile court serves the protective goal of the Juvenile Court Law. It is imposed as an alternative to the more serious measure of commitment to a juvenile camp. Its purpose is to demonstrate to the minor the road to which continuation of delinquency will lead while at the same time preserving family ties which are the best of all possible means of bringing the child to productive adulthood. It seeks to avoid the unkind leniency which all too often leads the juvenile to further and more aggravated violations of law and consequently to a continuum of more severe treatment through camp and youth authority commitment to a sentence of state prison by a felony court." (52 Cal.App.3d at p. 749.)

Statutory changes since *Ricardo M.*, taken as a whole, reflect legislative awareness and approval of the holding in that case. In 1977, the Legislature amended section 777 to add subdivision (b), which authorized commitment in juvenile hall for *violation* of probation, *but limited* such confinement to

---

[19]These procedures are required by section 777 in most but not all cases in which a ward of the juvenile court who has been left in the physical custody of his parents is removed from the home. The section provides, in pertinent part:

"An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.

"(a) The supplemental petition shall be filed by the probation officer, where a minor has been declared a ward of the court or a probationer under Section 601, and by the prosecuting attorney at the request of the probation officer where a minor has been declared a ward or probationer under Section 602, in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor."

[20]Section 730 authorizes the court to place a ward under the custody and control of the probation officer and to "make any and all reasonable orders for the conduct of such ward including the requirement that he go to work and earn money for the support of his dependents or to effect reparation and in either case that he keep an account of his earnings and report the same to the probation officer and apply such earnings as directed by the court. The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

two periods of fifteen days each during the period of the wardship.[21] In *In re Mark M.* (1980) 109 Cal.App.3d 873 [167 Cal.Rptr. 461], the Court of Appeal considered the application of subdivision (b) to a case in which the juvenile court had stayed 23 of 25 days of detention in juvenile hall ("Ricardo M. time") imposed as a modified condition of probation following the sustaining of a supplemental petition filed pursuant to section 777 alleging a violation of probation. The 23 days were stayed on condition that the ward not miss school, and on the date set for further hearing the court ordered execution of the stayed detention time without following the supplemental petition procedures of section 777. The Court of Appeal held that this summary procedure was contrary to the "clear implication of subdivision (b) . . . that a supplemental petition must be filed whenever the minor is to be committed to a county juvenile institution for violating a condition of probation, although the basis for the commitment changes if its term exceeds 15 days as it did here. The effect of section 777, subdivision (b) is that if a court stays *Ricardo M.* time, it cannot later impose it unless the provisions of section 777 [i.e., 'noticed hearing upon a supplemental petition'] are first complied with." (109 Cal.App.3d 873, 877.)

In 1981, the Legislature amended section 777 to add subdivision (e) (Stats. 1981, ch. 1142, § 9, p. 4536), which provides: "The filing of a supplemental petition and the hearing thereon shall not be required for the commitment of a minor to a county institution for a period of 30 days or less pursuant to an original or a previous order imposing a specified time in custody and staying the enforcement of the order subject to subsequent violation of a condition or conditions of probation, provided that in order to make the commitment, the court finds at a hearing that the minor has violated a condition of probation." This provision, while apparently in response to *Mark M.*, gives express recognition to the practice of imposing time in juvenile hall either as a condition of probation in an original disposition, or as a condition in a subsequent order in which the minor is granted or continued on probation.

Here appellant had been in the custody of his parents under a grant of probation prior to his commission of the new violations. Although the juvenile court removed him from their custody and placed him in the custody of the probation officer in this proceeding, the order unquestionably contem-

---

[21]Subdivision (b) of section 777 provides: "Notwithstanding the provisions of subdivision (a), if the petition alleges a violation of a condition of probation and is for the commitment of a minor to a county juvenile institution for a period of 15 days or less, it is not necessary to allege and prove that the previous disposition has not been effective in the rehabilitation or protection of the minor. In order to make such a commitment the court must, however, find that the commitment is in the best interest of the minor. The provisions of this subdivision may not be utilized more than twice during the time the minor is a ward of the court."

plates that upon release from the camp placement he would be returned to the physical custody of his parents and continue to be on probation.[22] We find nothing in the language of subdivision (e) of section 777 to suggest that the Legislature did not intend to permit the use of a stayed *Ricardo M.* order as a condition of probation when the immediate disposition provides for institutional placement of a ward, but that placement is to be followed by a release of the ward to his parents or other custodians on probation.

Nor do we perceive any abuse of discretion in the court's conclusion that the stayed *Ricardo M.* order was appropriate and would serve the purpose of the Juvenile Court Law by deterring future violations and thus encouraging rehabilitation. The probation officer's report prepared for consideration of the court at the disposition hearing reflects a pattern of delinquency commencing when appellant was 13 years of age and continuing through the filing and adjudication of a prior petition which was sustained in 1981 when appellant, then 15 years old, was found to have committed burglary and placed home on probation, to the filing of the instant petitions. The prior disposition having been ineffective in rehabilitating appellant, the court could reasonably conclude that when appellant was again returned to the home of his parents on probation, the threat of further confinement if he again violated the conditions of probation would serve as a deterrent to delinquent behavior.

The judgment (order for camp-community placement) is affirmed.

Kaus, J., Broussard, J., and Lucas, J., concurred.

**MOSK, J.**—I dissent.

The Attorney General does not question the patent unlawfulness of the search and seizure conducted in this case by two Long Beach police officers. Thus, the issue to be decided is whether the voters, by adopting Proposition 8, intended to allow such illegalities to go undeterred by the vicarious exclusionary rule. In light of the long history of jurisprudence in this state surrounding this rule, and the vague, imprecise and inconclusive language of the assertedly relevant portion of Proposition 8, I am compelled to conclude that the voters intended no such result.

---

[22]Among the provisions of the dispositional order reflecting this intent are conditions requiring that appellant obey all orders of the probation officer and the court; obey all instructions and orders of the camp staff *and* his parents; report to and notify the probation officer of any change of address; attend a school program approved by the probation officer; and not be out of his residence between 10 p.m. and 5 a.m. except as permitted by his parents.

I. *History of the Vicarious Exclusionary Rule in California*

In the landmark case of *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], we held that evidence obtained in violation of the federal or state Constitutions cannot be admitted in a criminal trial. We judged this remedy to be necessary for two reasons. First, it deters police misconduct: "without fear of punishment or other discipline, law enforcement officers, sworn to support the Constitution of the United States and the Constitution of California, frankly admit their deliberate, flagrant acts in violation of both Constitutions and the laws enacted thereunder." (*Id.* at pp. 437-438.) Second, the rule is necessary because it preserves the integrity of the judicial system and of the government as a whole: "When, as in the present case, the very purpose of an illegal search and seizure is to get evidence to introduce at a trial, the success of the lawless venture depends entirely on the court's lending its aid by allowing the evidence to be introduced. It is no answer to say that a distinction should be drawn between the government acting as law enforcer and the gatherer of evidence and the government acting as judge." (*Id.* at p. 445.) "It is morally incongruous for the state to flout constitutional rights and at the same time demand that its citizens observe the law." (*Id.* at p. 446.)

The court addressed the objection that the exclusionary rule is not a proper remedy for unlawful conduct by the police. The thrust of this argument is that the purpose of a trial is to find the truth, and thus there is a premium on the introduction of any evidence having probative value. Additionally, a criminal dangerous to society should not be allowed to go free simply because the police committed errors in his capture. (*Id.* at pp. 442-443.) But this court, in *Cahan* and in many cases since, has recognized that the exclusionary rule is the only effective sanction to deter police misconduct: neither administrative, criminal, nor civil remedies have been adequate for the purpose. (*Id.* at p. 447; *People* v. *Martin* (1955) 45 Cal.2d 755, 760 [290 P.2d 855]; *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 156 [98 Cal.Rptr. 649, 491 P.2d 1].) Thus, the arguments against the exclusionary rule are better aimed at the substantive rights guaranteed by the United States and California Constitutions: when a criminal escapes punishment because evidence is excluded at trial, it is not "because the constable blundered, but because the Constitutions prohibit securing the evidence against him. Their very provisions contemplate that it is preferable that some criminals go free than that the right of privacy of all the people be set at naught." (*People* v. *Cahan, supra,* 44 Cal.2d at p. 449.) In short, " 'The exclusion of the evidence is the only sanction which makes the rule effective. It is the rule, not the sanction, which imposes limits on the operation of the police. If the rule is obeyed as it should be, and as we declare it should be, there

will be no illegally obtained evidence to be excluded by the operation of the sanction.' " (*Id.* at p. 450, fn. *.)

One year after *Cahan,* this court adopted the vicarious exclusionary rule in *People* v. *Martin, supra,* 45 Cal.2d 755. The police, after unlawfully searching a small office in which the defendant was present, arrested him and charged him with bookmaking and keeping premises for the purpose of bookmaking. The defendant disclaimed any interest in the premises searched, and thus could not claim that his own constitutional rights had been violated. We held that "Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights." (*Id.* at p. 761.) The need to deter police misconduct, the ineffectiveness of all other remedies but the exclusionary rule, and the importance of avoiding judicial participation in unlawful acts, do not depend on whether the defendant's own rights were violated. Further, to limit challenges to violations of only the defendant's constitutional rights "virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them." (*Id.* at p. 760.) "[I]f law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified." (*Ibid.*)

Thus, to deter police misconduct and to prohibit police from profiting from their unlawful acts, the vicarious exclusionary rule came to be. This rule is now firmly established in California jurisprudence. (See *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 157, 161, and cases cited.) Indeed, it is so much a part of the law of this state that it "should be a commonplace to any attorney engaged in criminal trials." (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 465 [34 Cal.Rptr. 863, 386 P.2d 487].) In *Ibarra,* the defense attorney failed to object to the introduction of unlawfully seized evidence because he was unaware of the *Martin* rule. We held this to be such a flagrant error as to constitute ineffective assistance of counsel. (*Id.* at p. 466.)

The federal standard for the exclusion of unlawfully seized evidence is markedly different. In *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the United States Supreme Court held that only those defendants whose own constitutional rights were infringed have standing to challenge the legality of a search. The court shifted its focus from the deterrent purpose of the exclusionary rule to the personal nature of Fourth Amendment rights: "since the exclusionary rule is an attempt to effectuate

the guarantees of the Fourth Amendment [citation], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." (*Id.* at p. 134 [58 L.Ed.2d at p. 395].) Thus, the court collapsed the standing issue into a substantive Fourth Amendment inquiry. (*Id.* at p. 139 [58 L.Ed.2d at p. 398].)[1]

II. *The Construction of Section 28, Subdivision (d)*

The majority hold that section 28, subdivision (d), of article I of the Constitution (hereinafter section 28(d)), adopted as part of Proposition 8, mandates obedience by California courts to the federal standard. The section provides in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded in any criminal proceeding . . . .* Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press." (Italics added.)[2]

A constitutional amendment is to be construed in the same manner as a statute. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239]; *Winchester* v. *Mabury* (1898) 122 Cal. 522, 527 [55 P. 393]; *McMillan* v. *Siemon* (1940) 36 Cal.App.2d 721, 726 [98 P.2d 790].) The amendment "must receive a liberal, practical common-sense construction . . . . [It] should be construed in accordance with the natural and ordinary meaning of its words." (*Amador Valley, supra,* 22 Cal.3d at p. 245; *In re Quinn* (1973) 35 Cal.App.3d 473, 482 [110 Cal.Rptr. 881].) Equally important, however, is the presumption against implied repeal of statutes and constitutional provisions; courts must undertake to reconcile potential conflicts whenever they arise. (*In re Thierry*

---

[1] The lack of a vicarious exclusionary rule can lead to flagrant abuses by the government. For example, in *United States* v. *Paynor* (1980) 447 U.S. 727 [65 L.Ed.2d 468, 100 S.Ct. 2439], the Internal Revenue Service launched an investigation into financial activities of Americans in the Bahamas. Pursuant to this scheme, a government agent authorized an informant's employee to ask a bank official to dinner. While they were at the restaurant, another informant broke into the official's apartment, stole his briefcase, photocopied the contents, and replaced the briefcase. Information leading to the defendant's undisclosed bank account was found. Although the Supreme Court admitted that measures taken to deter this type of conduct appeared "less positive than one might expect from an agency charged with upholding the law" (*id.* at p. 733, fn. 5 [65 L.Ed.2d at p. 475]), it denied the defendant standing to challenge the search: "To require . . . the suppression of highly probative evidence in a trial against a third party would penalize society unnecessarily." (*Id.* at p. 734, fn. 5 [65 L.Ed.2d at p. 475].) The court seemingly was unconcerned with the stigma society and the judicial process suffer from such abusive governmental activity.

[2] The full text of Proposition 8, its analysis by the Legislative Analyst, and the ballot arguments for and against it are reprinted in the appendix to *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 300-306 [186 Cal.Rptr. 30, 651 P.2d 274].

*S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610]; *Warne v. Harkness* (1963) 60 Cal.2d 579, 587-588 [35 Cal.Rptr. 601, 387 P.2d 377]; *Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575].) Further, when the drafters of an enactment use language that has previously been judicially construed, they are presumed to use it in the sense placed on it by the courts. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *Buchwald* v. *Katz* (1972) 8 Cal.3d 493, 502 [105 Cal.Rptr. 368, 503 P.2d 1376].) Also, it is well recognized that "The literal language of enactments may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers." (*Amador Valley, supra,* 22 Cal.3d at p. 245.) The majority's interpretation of section 28(d) results in an implied repeal of a fundamental aspect of article I, section 24, of the Constitution, ignores judicial precedent construing the language used by the drafters of section 28(d), and produces "absurd results" in light of the avowed purposes of Proposition 8.

### A. *The Presumption Against Implied Repeal*

The people of this state have the power to repeal provisions of the Constitution by voting on an initiative or a legislative proposal. (Const., art. XVIII, §§ 1, 3.) Yet that power must be unambiguously exercised. "Even where one of two inconsistent [enactments] is later than the other and . . . does not purport to continue the other in operation, it is settled that there is a presumption against repeal by implication, that to overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent as to prevent their concurrent operation, and that the courts are bound to maintain the integrity of both [enactments] if they may stand together." (*Warne* v. *Harkness, supra,* 60 Cal.2d 579, 587-588; accord, *In re Thierry S., supra,* 19 Cal.3d 727, 744; *County of Placer* v. *Aetna Casualty etc. Co.* (1958) 50 Cal.2d 182, 188-189 [323 P.2d 753].)[3] The majority's reading of section 28(d) results in a substantial repeal of article I, section 24, and article I, section 13, of the Constitution. Section 24 reads in pertinent part: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution." Section 13 protects the people of this state from unreasonable searches and seizures. In order to reconcile section 28(d) with section 24 and section 13, it is necessary to examine the history and meaning of the latter two provisions.

It is a basic premise of constitutional law that the states may adopt search and seizure rules affording greater protection to their citizens than is re-

---

[3]The majority rely on the rule that this canon of construction does not apply to cases in which there is evidence of contrary legislative or popular intent. As I will explain below, there is no indication in section 28(d) of any such intent on the part of the voters.

quired by the United States Constitution. (*Alderman* v. *United States* (1969) 394 U.S. 165, 175 [22 L.Ed.2d 176, 187-188, 89 S.Ct. 961]; *Cooper* v. *California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788].) "[T]he California Constitution is, and always has been, a document of independent force. Any other result would contradict not only the most fundamental principles of federalism but also the historic bases of state charters." (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 549-550 [119 Cal.Rptr. 315, 531 P.2d 1099].) Thus article I, section 13, of the Constitution has a life of its own, separate from the jurisprudence surrounding the Fourth Amendment to the United States Constitution. As we stated in *Brisendine* (*id.* at pp. 550-551), "in determining that California citizens are entitled to greater protection under the California Constitution against unreasonable searches and seizures than that required by the United States Constitution, we are embarking on no revolutionary course. Rather we are simply reaffirming a basic principle of federalism—that the nation as a whole is composed of distinct geographical and political entities bound together by a fundamental federal law but nonetheless independently responsible for safeguarding the rights of their citizens."

It was to codify this fundamental principle that the people of California adopted section 24 at the November 1974 General Election. The ballot pamphlet distributed to all voters explained that section 24 "clarifies existing law" by providing, inter alia, that "rights guaranteed by the State Constitution are not dependent on those guaranteed by the federal Constitution." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1974), analysis by Legislative Analyst, p. 26.) The measure was overwhelmingly approved by 70.5 percent of the voters.

That the exclusionary rule and the principle of vicarious standing are fundamental aspects of California's constitutional law cannot be doubted. In *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], the defendant was able to challenge the constitutionality of the arrest and search of a third party. (*Id.* at p. 274.) We held that "The rule that requires a reversal where incriminatory evidence has been secured by means of an illegal search is not a mere technical rule of evidence. It is based on the fundamental concept that such a rule is *required* in order to give substance to the rights conferred by the provisions of our federal and state Constitutions prohibiting such seizures." (*Id.* at p. 275, italics added.) And in *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 161, we observed that this court has repeatedly reaffirmed *Martin* and its *raison d'être* as a "necessary adjunct" to *Cahan.* As in *People* v. *Brisendine, supra,* 13 Cal.3d 528, 551, "The ultimate confirmation of our conclusion occurred, finally, when the

people adopted article I, section 24, of the California Constitution at the November 1974 election . . . ."[4]

In light of this history I cannot accept the argument that such a firmly established and fundamental rule, incorporated in section 13 and section 24 as a basic provision of California constitutional law, was impliedly overruled by the broad, nonspecific language of Proposition 8. Nothing on the face of section 28(d) or the ballot materials assertedly explaining it explicitly mentions section 24, section 13, or the exclusionary rule. Yet it is evident that the drafters knew very well how to repeal specific portions of the Constitution if they wished to do so: e.g., section 2 of Proposition 8 expressly deletes article I, section 12, of the Constitution, which afforded most accused persons the right to be released on bail while awaiting trial. In stark contrast is the vague and general language of section 28(d) and the ballot information interpreting it.

The majority direct us to the analysis by the Legislative Analyst contained in the voter pamphlet. The portion relating to section 28(d) declares in part, "Under current law, certain evidence is not permitted to be presented in a criminal trial or hearing. For example, evidence obtained through . . . unlawful searches of persons or property, cannot be used in court. This measure generally would allow most relevant evidence to be presented in criminal cases . . . . The measure could not affect *federal* restrictions on the use of evidence." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 8, 1982) p. 32, italics in original (hereafter Ballot Pamp.).) But to say that "most" evidence "generally" would be allowed to be presented is hardly a clear mandate that *all* California exclusionary rules are to be abrogated. And the statement regarding the continued vitality of federal exclusionary rules does not necessarily imply the demise of all state rules. Nowhere does the Legislative Analyst state, as the majority claim, that "unlawfully seized evidence would become admissible except to the extent that the federal Constitution forbids its use." (*Ante,* at p. 886.) Indeed, that there is no such statement anywhere in the ballot materials indicates that the majority's interpretation of section 28(d) is not compelled. As the majority note, section 28(d) has been described as "the most ambiguous and least understood section of Proposition 8." (Assem. Com. on Crim. Justice, Analysis of Prop. 8, Mar. 24, 1982, p. 10.)

---

[4]Indeed, even the majority seem to recognize that the vicarious exclusionary rule is deeply embedded in our Constitution. Nevertheless they inconsistently assert that "Neither [the exclusionary rule nor the vicarious exclusionary rule] is itself part of article I, section 13" (*ante,* at p. 887), and at the same time acknowledge our holding that the vicarious exclusionary rule has "become one that [is] mandated by . . . the . . . state Constitution[]" (*ante,* at p. 890).

(*Ante,* at p. 886, fn. 6.)[5] The vague, nonspecific language of section 28(d) simply does not repeal the clear mandate of section 24 or the exclusionary rules embodied therein.[6]

### B. *The Controlling Authority of Prior Judicial Construction*

The result I reach is mandated by a further principle of statutory and constitutional construction: " 'where the legislature uses terms already judicially construed, "the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." ' " (*People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33], quoting from *City of Long Beach* v. *Marshall* (1938) 11 Cal.2d 609, 620 [82 P.2d 362]; accord, *Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721, 734; *In re Jeanice D.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr. 455, 617 P.2d 1087]; *Buchwald* v. *Katz, supra,* 8 Cal.3d 493, 502.) Thus we must presume that the drafters were aware of judicial decisions construing the language used in section 28(d), and that they intended a construction consistent with those decisions. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155]; *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].)

In *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, we addressed a challenge substantially similar to that presented here. In *Kaplan,* a police officer

---

[5]The ballot arguments by the proponents and opponents of Proposition 8 provide even less support for the majority's conclusion. First, as the majority fail to point out, these arguments relate to the whole of Proposition 8, not just section 28(d). Second, these arguments are even more vague than the Legislative Analyst's analysis. For example, Lieutenant Governor Mike Curb asserts that "By voting 'yes' on the Victims' Bill of Rights you will restore balance to the rules governing the use of evidence against criminals" (Ballot Pamp., p. 34). How the balance is to be restored is not explained. Governor Deukmejian, then the Attorney General, states: "higher courts of this state have created additional rights for the criminally accused and placed more restrictions on law enforcement officers. This proposition will overcome some of the adverse decisions by our higher courts." (*Ibid.*) Which decisions, and what rules of law they affect, are not listed.

One problem with ballot arguments, which we noted in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 143 [197 Cal.Rptr. 79, 672 P.2d 862], footnote 11, is that "they are stronger on political rhetoric than on legal analysis." For example, Paul Gann writes: "[The People] are not only victims of crime, they are victims of our criminal justice system—the liberal reformers, lenient judges and behavior modification do-gooders who release hardened criminals again and again to victimize the innocent." (Ballot Pamp., p. 35.) Such remarks hardly indicate a clear intent on the part of the voters to achieve a result that was nowhere clearly indicated.

[6]In *Brosnahan* v. *Brown, supra,* 32 Cal.3d 236, 257, we stated that "it would have been wholly unrealistic to require the proponents of Proposition 8 to anticipate and specify in advance every change in existing *statutory* provisions which could be expected to result from the adoption of that measure." (Italics added.) However, it is one thing to expect every detail of every statute affected by section 28(d) to be specified, and quite another to expect at least some mention of section 24, the *constitutional* umbrella covering all these provisions.

had seen a car speeding. As he turned on his red light to signal the driver to stop, the officer observed a passenger hide something in his coat from under the front seat. On the theory that the "something" was a weapon, the officer ordered the passenger from the car and subjected him to a patdown search. In the course of the search, the officer felt a lump he was "pretty sure . . . was not a weapon," but having "an idea it was pills," placed the passenger under arrest and reached inside his shirt pocket. The lump consisted of a number of LSD tablets in a plastic bag. In exchange for a promise of immunity, the passenger testified that the defendant, another passenger, had sold him the pills. Under *Martin* the defendant would have had standing to challenge the search pursuant to the vicarious exclusionary rule; under federal law he would not. (*Alderman* v. *United States, supra,* 394 U.S. 165, 171-176 [22 L.Ed.2d 176, 185-188].) All parties conceded that the search was unlawful. The issue was whether then newly enacted Evidence Code section 351, stating that "Except as otherwise provided by statute, all relevant evidence is admissible," repealed the *Martin* rule.

We held that it did not. After reviewing the history of the vicarious standing rule, and emphasizing how deeply embedded it was in the law of California, we concluded that " 'We do not believe that such a firmly established and fundamental rule of the criminal law of years' standing was overruled by any vague and indecisive provision in the Evidence Code—nor do we believe that the Legislature so intended.' " (6 Cal.3d at p. 161, quoting *People* v. *Starr* (1970) 11 Cal.App.3d 574, 583 [89 Cal.Rptr. 906].)

The Attorney General argues that *Kaplan* is distinguishable because our holding there was assertedly based on legislative intent. Section 351 was part of a massive revision of California evidence law into an Evidence Code that would leave some rules intact while overhauling others. We stressed that whenever the drafters meant to repeal or change existing law, they spelled out in their official comments the precise consequences of their action and the statutes or case law it affected. (*Id.* at p. 158.) We concluded that "In view of the commission's painstaking analysis of many evidentiary rules that are of less importance and notoriety than *Martin,* its deafening silence on this point cannot be deemed the product of oversight. It can only mean the commission did not intend—and the code therefore does not accomplish—a change in the *Martin* rule." (*Id.* at p. 159.) The Attorney General's reasoning that *Kaplan* is inapposite misses the point. It is not *how* we reached our conclusion in *Kaplan* that is decisive in the case at bar; the determinative factor for purposes of statutory construction is that we *did* reach that conclusion—i.e., that the language used was incapable of effecting the result in question.[7] In section 28(d) the drafters of Proposition 8

---

[7]The Attorney General also argues that *Kaplan* rested on the proviso to section 351:

chose to use language that is the mirror image of Evidence Code section 351: while section 351 provides that "all relevant evidence is admissible," section 28(d) states that "relevant evidence shall not be excluded."

Accordingly, I believe we are compelled to interpret section 28(d) in light of the *Kaplan* decision, and we must assume that the framers of the section chose its language with knowledge of *Kaplan*. In light of the "deafening silence" of a contrary intent, as discussed above, it must therefore be concluded that they did not intend section 28(d) to abrogate the rule of vicarious standing or other independent state grounds for the exclusion of evidence.

## C. *Voter Intent and Avoidance of Absurd Results*

One of the cardinal principles of statutory and constitutional construction is that an enactment must be read to avoid absurd results and to fulfill the intent of the framers. (*Amador Valley, supra,* 22 Cal.3d at p. 245.) The majority's interpretation of section 28(d) would lead to absurd results counter to the stated purposes of Proposition 8. Further, I cannot agree that the voters "clearly" intended to subordinate California's law of exclusion to the federal standard.

The purpose of Proposition 8 is set forth in its section 3, now article I, section 28, subdivision (a), of the Constitution.[8] That section states in part that Proposition 8 is "a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights . . . ." The section goes on to proclaim that "The rights of victims pervade the criminal justice system, encompassing . . . the . . . basic expectation that persons who commit felonious acts causing injury to innocent victims will

---

"*Except as otherwise provided by statute,* all relevant evidence is admissible." (Italics added.) We did hold that the *Martin* rule, although not "required by" the Fourth Amendment, was "based on" the constitutionally compelled exclusionary rule, and thus fell within the proviso. (*Kaplan, supra,* 6 Cal.3d at p. 161.) However, this was an alternate ground of decision; our conclusion that section 351 was ineffective to repeal *Martin* and independent state exclusionary rules in general was a separate and determinative holding.

[8]The full text of section 28, subdivision (a), reads: "The People of the State of California find and declare that the enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights, is a matter of grave statewide concern. [¶] The rights of victims pervade the criminal justice system, encompassing not only the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts, but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance. [¶] Such public safety extends to public primary, elementary, junior high, and senior high school campuses, where students and staff have the right to be safe and secure in their persons. [¶] To accomplish these goals, broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary and proper as deterrents to criminal behavior and to serious disruption of people's lives."

be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected . . . ." The avowed purpose of Proposition 8 is thus to implement safeguards for victims of crimes and to deal more harshly with violent criminals.

If we were to accept the majority's reading of section 28(d), absurd results manifestly counter to the purposes of Proposition 8 would follow. For example, Evidence Code section 352.1, which prevents the introduction into open court of a rape victim's address and telephone number, would be repealed. A victim who testified at the trial could have his religious beliefs introduced and challenged in court, without the protective shield of Evidence Code section 789. Evidence Code section 786 would be repealed, permitting a general attack on the character of a victim-witness apart from his reputation for honesty. Evidence Code section 787 would be repealed, allowing "defense counsel [to] attack the credibility of police officers, victims and other prosecution witnesses with any relevant evidence of specific instances of bad conduct. Were they expelled from school for cheating? A thorough investigation of the witness' background will turn up numerous possibilities." (Uelmen, *Gann's Bonanza for Defense Counsel*, in Criminal Practice after Proposition 8 (Cont.Ed.Bar 1982) p. 7.) Thus the majority's interpretation of section 28(d) would violate subdivision (a) of section 28 by *removing* safeguards that California law gives to victims. I cannot believe that such was the will of the voters.[9]

To give meaning to the language of a constitutional provision created by initiative, courts may look to the ballot summary and analysis and arguments presented to the electorate. (*Amador Valley, supra,* 22 Cal.3d at pp. 245-246.) However, as I explained above, nothing in the voter pamphlet specifies that Proposition 8 repeals all independent California grounds for the

---

[9] I note in passing that the majority of cases in which evidence is excluded under the *Cahan* and *Martin* rules involve victimless, nonviolent crimes. (Kamisar, *The exclusionary rule in historical perspective: the struggle to make the Fourth Amendment more than 'an empty blessing'* (1979) 62 Judicature 337, 341; Kaplan, *The Limits of the Exclusionary Rule* (1974) 26 Stan.L.Rev. 1027, 1028; Silberman, Criminal Violence, Criminal Justice (1978) p. 254.) Thus, the major impact of California exclusionary rules do not implicate victims' rights at all.

Amicus curiae for respondent raises the specter that under the vicarious exclusionary rule defendants would be permitted to challenge unlawful searches of their victims. The fear is unfounded. Amicus points to, and I can find, only one case following *Martin* that permitted a defendant to suppress evidence on the ground that it was obtained in violation of the victim's constitutional rights. (*People v. Jager* (1956) 145 Cal.App.2d 792, 798-800 [303 P.2d 115].) Numerous cases since then have demonstrated the courts' refusal to deem such evidence inadmissible. (E.g., *People v. Solario* (1977) 19 Cal.3d 760, 764 [139 Cal.Rptr. 725, 566 P.2d 627]; *Pating v. Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 608, 616-617 [182 Cal.Rptr. 20]; *People v. Baker* (1981) 121 Cal.App.3d 68, 72 [175 Cal.Rptr. 121]; *People v. Hackett* (1981) 115 Cal.App.3d 592, 598 [171 Cal.Rptr. 320]; *People v. Cook* (1977) 69 Cal.App.3d 686, 689-690 [138 Cal.Rptr. 263].)

exclusion of evidence in criminal trials. Additionally, in the case of complex initiative measures it is often difficult to rely on ballot information to discern voter intent: "There are two factors which greatly inhibit [the electorate's] thoughtful consideration of the issues presented by all but the most simple initiative: the complexity of the ballot measure and the nature of the political campaign waged in its behalf." (Note, *The California Initiative Process: A Suggestion for Reform* (1975) 48 So.Cal.L.Rev. 922, 934.) When a ballot proposal is lengthy "only the most diligent voter [will] wade through [it]" (*id.* at p. 935), the result being a "superficial intellectual exercise that leaves voters vulnerable to emotional—and perhaps misleading—advertising." (*Id.* at p. 936.) Proposition 8 is undeniably long and complex: it adds one section containing seven subdivisions to the Constitution, and repeals one section thereof; it also adds five sections to the Penal Code and three more to the Welfare and Institutions Code.

Another problem arises when a ballot measure affects many different rules of law. Even if arguendo Proposition 8 is not violative of the one-subject rule for the purpose of qualifying the whole measure for the ballot (*Brosnahan* v. *Brown, supra*, 32 Cal.3d 236, 252-253, but see pp. 262-299), it remains speculative to rely on "voter intent" as it relates to any one provision. "[A] proposition may contain 20 good features, but have one bad one secreted among the 20 good ones. The busy voter does not have the time to devote to the study of long, wordy, propositions and must rely upon such sketchy information as may be received through the press, radio or picked up in general conversation. If improper emphasis is placed upon one feature and the remaining features ignored, or if there is a failure to study the entire proposed amendment, the voter may be misled as to the over-all effect of the proposed amendment." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 2, 1948), argument in favor of Prop. 10, p. 8.) Given the complexity and length of Proposition 8 and the vagueness of the language of section 28(d), it is impossible to discern a "clear intent" of the electorate to abrogate independent state grounds for the exclusion of evidence.

Under a proper construction of section 28(d), the trial court erred in admitting the evidence seized in the case at bar. Both parties concede that the search was unreasonable under California law. Because I believe section 28(d) did not repeal the vicarious exclusionary rule or other existing state grounds for the exclusion of evidence, I would hold that Lance had standing to challenge the unlawful search.

When constitutional rights are implicated, the end cannot justify the means. The evidence is therefore inadmissible, and there appearing no other

grounds in the record to uphold the search, I conclude that the order appealed from should be reversed.

Bird, C. J., and Reynoso, J., concurred.

Appellant's petition for a rehearing was denied March 21, 1985, and the opinion was modified to read as printed above. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.