[Nos. B054071, B056522. Second Dist., Div. Three. Apr. 14, 1992.]

WILSHIRE INSURANCE COMPANY et al., Plaintiffs and Appellants v. JOHN GARAMENDI, as Insurance Commissioner, etc., et al., Defendants and Respondents.

## COUNSEL

Knapp, Petersen & Clarke, David F. Hauge, Joseph K. Hegedus, Steven G. Winder, Stephen M. Harris, Leboeuf, Lamb, Leiby & Macrae, Richard C. Cole, Kenneth B. Schnoll, Karen Hahn Ventrell, Kyle M. Fisher, Adams, Duque & Hazeltine, Dale A. Welke, Catherine Hunt Ruddy and William J. Kopesky for Plaintiffs and Appellants.

Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Defendants and Respondents.

## OPINION

**DANIELSON, Acting P. J.**—In these consolidated actions, appellant insurers seek to have themselves and other similarly situated insurers exempted from the obligation to pay their policyholders the rate rollbacks called for by Proposition 103 (Ins. Code, § 1861.01 et seq.),[1] enacted November 8, 1988. They contend their applications for exemption must be deemed approved pursuant to section 1861.05, subdivision (c), because the objectors thereto allegedly failed to timely request hearings, and former Insurance Commissioner Roxani Gillespie allegedly did not officially determine to hold hearings on the applications within 60 days after they were filed. The trial court determined the rollback exemption applications in question are not governed by subdivision (c) of section 1861.05, and entered judgments denying the insurers' petitions for writs of mandamus and prohibition and dismissing their complaints for declaratory relief. We affirm.

### INTRODUCTION

Proposition 103, which applies to automobile and other types of insurance, ". . . begins with a statement of findings and purpose, asserting that '[e]normous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians,' and that 'the existing laws inadequately protect consumers and allow insurance companies to charge

---

[1]Unless otherwise indicated, all statutory references are to the Insurance Code.

excessive, unjustified and arbitrary rates.' The initiative's stated purpose is to ensure that 'insurance is fair, available, and affordable for all Californians.' " (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 812-813 [258 Cal.Rptr. 161, 771 P.2d 1247].)

Section 1861.01 provides for rate rollbacks in subdivision (a), calling for immediate reduction of rates to " '. . . at least 20 percent less' than those in effect on November 8, 1987 (approximately the date when the initiative was proposed, and one year prior to its enactment)." As enacted, subdivision (b) of section 1861.01 provided that "[b]etween November 8, 1988, and November 8, 1989, rates and premiums reduced pursuant to subdivision (a) may be only increased if the commissioner finds, after a hearing, that an insurer is substantially threatened with insolvency." Subdivision (c) of section 1861.01 provides that "[c]ommencing November 8, 1989, insurance rates subject to this chapter must be approved by the commissioner prior to their use." (*Calfarm, supra,* 48 Cal.3d at p. 813.)

In *Calfarm, supra,* a coalition of insurers sought to invalidate the entire initiative. After initially staying the rollback provisions, our Supreme Court upheld the bulk of Proposition 103, but determined that subdivision (b) of section 1861.01, limiting first year rate adjustments to insurers "substantially threatened with insolvency," violated due process because it ". . . precludes adjustments necessary to achieve the constitutional standard of fair and reasonable rates . . . ." (*Calfarm, supra,* 48 Cal.3d at p. 821.)

The court found section 1861.01, subdivision (b) severable. Thus, its invalidation left intact the general standard for rate adjustment set forth in section 1861.05, subdivision (a): "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter. In considering whether a rate is excessive, inadequate or unfairly discriminatory, no consideration shall be given to the degree of competition and the commissioner shall consider whether the rate mathematically reflects the insurance company's investment income." These standards now govern all rate regulation, including such regulation during the first year of the initiative's operation. (*Calfarm, supra,* 48 Cal.3d at p. 822.)

The court noted in *Calfarm* that subdivision (c) of section 1861.01, requiring that "insurance rates subject to this chapter must be approved by the commissioner prior to their use" did not take effect until November 8, 1989, and although the insolvency standard (§ 1861.01, subd. (b)) precluded the raising of rates during the first year of the initiative without a prior hearing, this provision was invalid. With its deletion, there remained no provision requiring prior approval of rate increases before November 8, 1989. (*Calfarm, supra,* 48 Cal.3d at p. 825, fn. 17.)

With respect to the period prior to November 8, 1989, the court observed that "the commissioner has the power to grant interim relief from plainly invalid rates. Her powers are not limited to those expressly conferred by statute; 'rather, "[i]t is well settled in this state that [administrative] officials may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers."' [Citations.] The power to grant interim relief is necessary for the due and efficient administration of Proposition 103, and may fairly be implied from its command that '[n]o rate shall . . . *remain in effect* which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter.' (§ 1861.05, subd. (a), italics added.)

"In short, any insurer who believes the rates set by section 1861.01, subdivision (a), are confiscatory may file an application with the Insurance Commissioner for approval of a higher rate. If that application is filed before November 8, 1989, the insurer may immediately begin charging that higher rate pending approval from the commissioner. After that date insurance rates subject to Proposition 103 must be approved by the commissioner prior to their use, but, as we have explained, the commissioner can approve an interim rate pending her final decision. If the commissioner finds the initiative's rate, or some other rate less than the insurer charged, is fair and reasonable, the insurer must refund excess premiums collected with interest. No insurer, however, will be compelled to charge the rates set by the initiative unless it either acquiesces in that rate or is unable to prove that a higher rate is constitutionally required. . . ." (*Calfarm, supra,* 48 Cal.3d at pp. 824-825, fns. omitted.) The court concluded, in view of these safeguards, ". . . that the initiative provision requiring a reduction in rate to at least 20 percent below 1987 rates does not, on its face violate the due process rights of insurers." (*Ibid.*)

## FACTUAL AND PROCEDURAL HISTORY

The decision in *Calfarm* was filed on May 4, 1989. On May 11, 1989, the commissioner gave public notice that any insurer for whom the rollback would result in confiscatory rates could file an application for a " '. . . fair and reasonable' rate which will provide the insurer with a 'reasonable rate of return' for each line of insurance written in California. . . ." The notice provided that ". . . [a]n insurer which chooses to make such application may immediately use the rate(s) for which it has applied. Thus, any insurer which files such an application by June 3, 1989 [the date upon which *Calfarm* became final and the stay of the rollback provision was lifted] need not roll its premiums back pending review of its application by the Insurance

Commissioner." The notice provided: "As will also be the case under the prior-approval system operative on November 8, 1989, rate increase applications filed with the Insurance Commissioner pursuant to this notice will be subject to the provisions of Insurance Code Sections 1861.05, 1861.06, 1861.07, 1861.08 and 1861.10(a) and (b). . . ."

On or before June 3, 1989, appellants filed applications for exemption from the rollback provision of section 1861.01, subdivision (a).

On June 22, 1989, the commissioner gave public notice of these rate applications.

On July 18, 1989, then Attorney General John Van de Kamp filed objections to approval of the exemption applications and a petition for hearing or hearings thereon. This petition was denied without prejudice to the filing of requests for hearings in connection with specifically identified rate relief applications.

On August 1, 1989, the commissioner scheduled hearings on the exemption applications of seven insurers, none of whom is a party to this case.

On August 7, 1989, Voter Revolt, sponsor of Proposition 103, also requested hearings on the exemption applications, again without specifying any particular application or applications. On the same day, the Attorney General filed 284 individualized petitions for hearing ". . . to ensure that consumers are not deprived of their right to the rollback of rates without any hearing."

On August 17, 1989, the commissioner published a list of "Companies Not Going To Hearing . . . Those Not On DOI [Department of Insurance] or AG's [Attorney General's] List." Some of the appellants were named on this list.

On August 21, 1989, 60 days had elapsed since the commissioner gave public notice.

On September 6, 1989, the commissioner granted the Attorney General's petitions and ordered a consolidated hearing on the exemption applications of approximately 281 insurers, including some of the appellants.

On October 2, 1989, the Insurance Department issued hearing notices to all insurers who had filed rollback exemption applications. A consolidated hearing was scheduled for October 30, 1989, for resolution of common issues.

Appellants filed motions with the commissioner to dismiss the rollback exemption proceedings, contending their applications for exemption from the rate rollback provision of section 1861.01, subdivision (a), were "deemed approved" pursuant to section 1861.05, subdivision (c), because no consumer or consumer representative requested a hearing on the applications within 45 days of the date of public notice of the application, and the commissioner did not determine to hold a hearing within 60 days of the date of public notice.[2] The motions were denied by an administrative law judge, whose decision was affirmed by Commissioner Gillespie. The present actions followed.

## CONTENTIONS

Appellants contend section 1861.05, subdivision (c) applies to their cases, and in any event the commissioner, whether required to or not, expressly elected to proceed on their applications in accordance with the provisions of section 1861.05. Therefore, their applications for exemption from the rate rollback provision of section 1861.01, subdivision (a), are deemed approved.

## DISCUSSION

■ " 'It is a settled principle in California law that "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." [Citation.]' " (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) When construction is necessary, of either constitutional or statutory provisions, ". . . the intent of the enacting body is the paramount consideration. [Citations.]" (*Id.*, at p. 889.)

The original rollback scheme set forth in section 1861.01 called for: (1) the immediate reduction of rates (subd. (a)); (2) during the first year after enactment of Proposition 103, increase in rates reduced pursuant to subdivision (a) upon the commissioner's *finding, after a hearing*, that an insurer was substantially threatened with insolvency (subd. (b)); and (3) the commissioner's *approval* of rates set after November 8, 1989 (subd. (c)). The statute thus

---

[2]Subdivision (c) of section 1861.05 provides: "The commissioner shall notify the public of any application by an insurer for a rate change. The application shall be deemed approved sixty days after public notice unless (1) a consumer or his or her representative requests a hearing within forty-five days of public notice and the commissioner grants the hearing, or determines not to grant the hearing and issues written findings in support of that decision, or (2) the commissioner on his or her own motion determines to hold a hearing, or (3) the proposed rate adjustment exceeds 7% of the then applicable rate for personal lines or 15% for commercial lines, in which case the commissioner must hold a hearing upon a timely request."

provided in different ways for two different periods following its enactment. The rollback provisions applied during the first year, and rates could be increased following rollback only upon the commissioner's specific finding, following a hearing, of threatened insolvency. ▮ We agree with the trial court that the required hearing and finding by the commissioner precluded application of section 1861.05, subdivision (c), which makes no provision for deeming the requisite hearing to have been held, or finding to have been made by the commissioner, to proceedings concerning rollbacks (§ 1861.01, subd. (b)).

After the first year rollback period, rates could be increased upon prior approval (§ 1861.01, subd. (c)), under the lesser standard set forth in section 1861.05, subdivision (a), and applications for rate changes could be deemed approved without a hearing as provided in section 1861.05, subdivision (c).

There is even less reason to believe the "deemer" provision of section 1861.05, subdivision (c) applies under the remedy fashioned by *Calfarm* following the striking of subdivision (b) of section 1861.01. While the standard applicable to rollbacks became the "excessive, inadequate, unfairly discriminatory" standard set forth in section 1861.05, subdivision (a), the remedy fashioned by the court for rollbacks violating the standard permits insurers seeking relief from rollbacks to file applications therefor, and to continue charging their prerollback rates pending the commissioner's approval. Thus, insurers subject to rate rollbacks may file applications for permission to maintain existing rates, rather than applications for rate increases following rollbacks, and will not require the protection against administrative delay provided by a "deemer" provision.

In *Calfarm*, the court also stated: "If the commissioner finds the initiative's rate, or some other rate less than the insurer charged, is fair and reasonable, the insurer must refund excess premiums collected with interest. No insurer, however, will be compelled to charge the rates set by the initiative unless it either acquiesces in that rate or is unable to prove that a higher rate is constitutionally required. . . ." (*Calfarm, supra,* 48 Cal.3d at p. 825, fn. omitted.) As noted by the trial court, *Calfarm* did not state that no insurer will be compelled to charge the initiative's rate where the rate applied for is deemed approved pursuant to subdivision (c) of section 1861.05; nor did *Calfarm* except from its refund requirement any rates deemed approved pursuant to subdivision (c) of section 1861.05. Had the court so intended, it easily could have so provided.

There is nothing in *Calfarm* mandating application of the "deemer" provision of section 1861.05, subdivision (c) to this court-fashioned remedy. In

fact, the court made it clear that the remedy derived, not from specific statutory language, but rather, from those additional powers necessary for the due and efficient administration of powers expressly granted by the initiative, or as may fairly be implied therefrom. (*Calfarm, supra,* 48 Cal.3d at p. 825.) Moreover, the court's concern in *Calfarm* was with the too-stringent standard set forth in subdivision (b) of section 1861.01, rather than the language therein requiring the commissioner's finding, after a hearing, that the rollback as applied to an objecting insurer violated the standard. The two-part scheme continues, requiring insurers to justify their requests for exception from the rollback requirement, but permitting automatic approval (Ins. Code, § 1861.05, subd. (c)) of subsequent applications for ordinary rate changes (Ins. Code, § 1861.01, subd. (c)).

■ The insurers contend the commissioner is estopped from holding hearings on their applications because Commissioner Gillespie first announced that applications for exemption from rollback would be treated in the same manner as applications under the prior approval system operative November 8, 1989, and neither the consumer representatives nor the commissioner thereafter complied with the provisions of section 1861.05, subdivision (c). It has long been settled that ". . . the authority of a public officer cannot be expanded by estoppel." (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 643 [234 P.2d 981].) " '. . . It is clear . . . that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.' " (*Jacques, Inc.* v. *State Bd. of Equalization* (1957) 155 Cal.App.2d 448, 462 [318 P.2d 6], quoting *County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].) In our case, the insurers seek to invoke the doctrine of estoppel in an attempt to exempt themselves from the rollback requirement of the initiative without having to justify their exemption claims, in contravention of the public policy objectives of the initiative. Estoppel does not apply.

In light of our determination that the "deemer" provision of section 1861.05, subdivision (c) does not apply to the rollback provision of the initiative (§ 1861.01, subd. (a)), we need not address the parties' arguments regarding compliance therewith.

## DECISION

The judgment is affirmed.

Croskey, J., and Hinz, J., concurred.

A petition for a rehearing was denied May 12, 1992, and appellants' petition for review by the Supreme Court was denied July 9, 1992.