Filed 12/12/13  P. v. James CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHEON LORENZO JAMES,<br><br>    Defendant and Appellant.</td><td>E054590<br><br>(Super.Ct.No. SWF10000828)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen Judge. (Retired judge of the Tulare Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Sheon Lorenzo James appeals after he was convicted by a jury of five counts of burglary and five counts of petty theft with theft priors. Defendant was sentenced as a third-striker. On appeal, he raises claims that the trial court erred in instructing the jury about the elements of aiding and abetting, and in sentencing defendant as a third-striker. We affirm.

FACTS AND PROCEDURAL HISTORY

On a series of dates between September 2009 and February 2010, defendant and his wife stole many bottles of liquor with a total value over $1,300 from several Albertson's supermarkets in Riverside County. After each theft, the couple left the scene in a white Lincoln SUV, which was eventually found to be registered to defendant's wife, Lola James. Jared Long was an Albertson's loss prevention agent. He prepared the reports for the first four (2009) thefts. He reviewed video footage as to several of the thefts, and on one occasion he had personally observed defendant and his wife leaving the store. He picked out defendant and defendant's wife from photographic lineup cards. Another loss prevention agent, Carl Bonomo, prepared a report about the theft in February 2010. He positively identified defendant at the preliminary hearing, based on his review of surveillance video footage of the theft.

After law enforcement investigation identified the car involved as belonging to defendant's wife, both defendant and his wife were eventually taken into custody. Defendant's wife ultimately pled guilty for her role in the thefts. Defendant was charged with five counts of burglary and five counts of petty theft with a prior. The information also alleged that defendant had suffered two prior strike convictions (for robbery), and

2

that he had served five prior prison terms (including the two robbery priors, one petty theft with a prior, one receiving stolen property, and one unlawful taking or driving a vehicle).

On June 22, 2011, a jury convicted defendant as charged on all counts. Defendant waived his right to a jury trial on the priors, and the trial court found true all five prison term priors, as well as both prior strike allegations. At sentencing on August 26, 2011, defendant asked the trial court to exercise its discretion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, to dismiss one of the strike prior allegations. The trial court adverted to a previous in-chambers discussion with the parties, and stated that it had considered the probation report, as well as the prosecution's sentencing brief. Defendant had several prior convictions, and a history of poor choices. Although the expected term of 125 years to life for a series of what were essentially petty thefts with priors seemed "outrageous" to the court, it could not find that defendant fell outside the spirit of the three strikes law. The court declined to strike either of the strike priors, and sentenced defendant to five consecutive terms of 25 years to life, for a total of 125 years to life on the primary offenses (burglary counts). The court imposed sentence on the remaining five petty-theft-with-a-prior counts, as well as the prison term prior enhancements, and stayed those sentences pursuant to Penal Code section 654.

Defendant filed a timely notice of appeal.

ANALYSIS

I.  Any Error in the Aiding and Abetting Instructions Was Harmless Beyond a

Reasonable Doubt

Defendant first contends that the trial court erred in its instructions on aiding and abetting.  Defendant points to a portion of the prosecutor's closing argument in which he discussed aiding and abetting:  "So you have an instruction in there talking about aiding and abetting and principals.  And those are legal terms, but basically it tells you . . . even if I don't go in and actually take the alcohol off the shelf and put it on my person and walk out, if I somehow facilitate, encourage, or aid in any way another person doing that —so, for example, as we see on the videos where the defendant can be seen blocking the camera angle, clearly looking at what Lola James is doing and what she is doing with her purse . . . or where you can clearly see he is handing her bottles—right?—that's still a principal, as well as it's aiding and abetting."

Defendant then notes that the trial court's instructions on aiding and abetting were incomplete, and therefore erroneous.  The court did instruct with CALCRIM No. 400, which informed the jury that a person who aids and abets an offense is equally guilty of the charged offense, and CALCRIM No. 1702, describing the intent of an aider and abettor to burglary, such as knowledge of the perpetrator's intent, and the intent to aid, facilitate, promote, instigate or encourage the commission of the burglary before leaving the burglarized premises.  The court did not, however, instruct the jury with CALCRIM No. 401, which provides in part:  "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:  [¶]  1.  The perpetrator

4

committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." CALCRIM No. 401 also informs the jury that mere presence at the scene of a crime is insufficient to constitute aiding and abetting. Defendant urges that the court's incomplete instructions omitted an element of the crime, for purposes of a conviction as an aider and abettor and, thus, violated defendant's rights under both the United States and California Constitutions. (See *People v. Flood* (1998) 18 Cal.4th 470, 479-480.) Defendant contends that the trial court's omission of CALCRIM No. 401 failed to define an actus reus, as required to find defendant guilty on an aiding and abetting theory.

" 'The trial court must instruct even without request on the general principles of law relevant to and governing the case . . . [including] instructions on all of the elements of a charged offense.' (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) '[A]n instructional error that improperly . . . omits an element of an offense . . . generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution.' (*People v. Flood* (1998) 18 Cal.4th 470, 502-503 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Such an error is reviewed under the harmless error standard announced in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Flood*, at p. 503.) Under the *Chapman* standard, 'an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error

5

was harmless beyond a reasonable doubt.' (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 106 S.Ct. 1431].)" (*People v. Haraszewski* (2012) 203 Cal.App.4th 924, 936.)

Upon a thorough examination of the record, we are convinced that the instructional omission did not contribute to the verdict. Although the prosecutor did make passing reference to aiding and abetting (such as by defendant blocking the surveillance camera view of what his wife was doing with the liquor bottles and her purse), the thrust of the evidence in all five incidents was defendant's active participation in the thefts.

On September 13, 2009, the surveillance video showed defendant taking liquor bottles from the shelf and handing them to his wife, who then concealed them. On September 22, 2009, the day of the second theft, loss prevention agent Long saw defendant and his wife in the store and recognized them, based on his review of the surveillance tape of the first theft. The builds of both people were the same, the way the woman held her purse was the same, and defendant's gait was the same as the man Long had seen in the earlier video. Long went quickly to the liquor aisle and verified a gap on the shelf; he ran back to the parking lot in time to see defendant and his wife drive away in the white Lincoln SUV. He identified a dealer sticker on the car; there was no license plate. As a result of Long's observations, the SUV was eventually traced to defendant's wife. From his observations that day, and of the video recording, the loss prevention agent testified that defendant and his wife both came into the store, and "they" concealed four bottles in defendant's wife's purse. On October 12, 2009, defendant and his wife

6

each took bottles from the shelf of the liquor department. Defendant put a bottle in his waistband, while his wife put bottles in her purse. On November 1, 2009, defendant's wife took bottles from the store shelf, and defendant concealed them. The fifth theft took place on February 18, 2010. A different loss prevention agent reviewed the video for that theft. Defendant took liquor bottles from the shelf. He put one in his waistband and gave others to his wife, who again put them into her purse.

Defendant stresses that loss prevention agent Long had testified that the video surveillance footage, and some digital still photographs made from the videos, were not alone enough to clearly identify defendant as the male perpetrator. However, whether the jury convicted defendant as a direct perpetrator or as an aider and abettor, it could not have done so under the instructions given unless it were satisfied beyond a reasonable doubt that defendant was in fact the man shown participating in the five thefts. If the jury did not believe that defendant was the person shown in the video or photographs, then it could not have convicted him, whether it relied on a theory of aiding and abetting, or whether it relied on a direct perpetrator theory. Therefore, the inability to identify defendant solely from the video or photos is irrelevant to the question presented by the instructional error. In addition, even though the video pictures and still photograph images may have been somewhat unclear, loss prevention agent Long did personally observe defendant while defendant and his wife were in the store. The video footage of the first theft provided sufficient clarity for loss prevention agent Long to recognize the general characteristics of defendant and his wife as matching the characteristics of the thieves from the first theft. If the jury believed in any manner that defendant was the

male person with defendant's wife—as the verdicts plainly show—then manifestly defendant was the person seen on the videos participating directly in each of the thefts.

Although defendant asserts that "[a] reasonable juror could have found that the prosecution did not prove [defendant] committed an act to facilitate his wife's crimes," the record belies this statement. The defense was not that defendant had merely stood by or been present (i.e., not doing anything to aid and abet) while his wife committed the thefts; rather, the defense was that someone else committed the thefts with defendant's wife. The man shown on the videos with defendant's wife was uncontrovertedly shown to be an active participant in all the thefts; the jury had every reason to believe that defendant was that man. The failure to instruct the jury fully on the elements of aiding and abetting was harmless beyond a reasonable doubt. (*Chapman v. California*, *supra*, 386 U.S. at p. 24.)

## II. The Trial Court Properly Understood and Exercised Its Discretion in Declining to Dismiss Defendant's Strike Priors

At sentencing, defendant requested the court to exercise its discretion under Penal Code section 1385 to dismiss one of his strike priors (Pen. Code, § 667, subds. (b)-(i)), so that he could be sentenced as a second-striker (double the base term) rather than a third-striker (25 years to life) on what he characterizes as "a string of low grade commercial burglaries."

The trial court declined to dismiss a strike prior. The court proffered the following statement: "I'll be up front with you. I think that 125 years for what amounts to five petty theft shoplifts with priors [or commercial burglaries] is an outrageous amount of

8

time to give him." The court frankly stated, if it were to dismiss a strike, it would do so "just because I think [the sentence] is too high. I don't like that much time for the acts that were committed here." However, the court recognized that the harshness of the penalty "is not a reason to strike a strike, and I don't believe I have the authority to do it under the law if [disproportionality] is my reasoning." The court stated, "I need to find the defendant comes outside the scope of the intention of the Three Strikes Law, not just that I think it's a very harsh sentence for the acts that were committed here."

Defendant argues that the court misunderstood the scope of its discretion, and that "[d]isproportionality, properly understood, remained a proper ground under the Three Strikes Law to sentence [defendant] as a second striker on one or more of his current convictions."

We conclude that the trial court did properly understand and exercise its discretion under Penal Code section 1385. Penal Code section 1385 permits a trial court to dismiss a strike prior allegation, under the three strikes law, "in the interests of justice." The three strikes law is a scheme intended to restrict the trial court's discretion with respect to the sentencing of repeat offenders. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Application of the sentencing scheme is mandatory, and the trial court's discretion to do otherwise is closely circumscribed. If a defendant comes within the three strikes law, the presumption is raised that the sentence prescribed is both reasonable and proper. (*Id*. at pp. 377-378.)

Dismissing a strike prior is reserved for extraordinary circumstances. The court must "consider whether, in light of the nature and circumstances of [the defendant's]

9

present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

As the trial court here clearly recognized, it could not justifiably find that defendant fell outside the spirit of the three strikes scheme. Defendant was a career criminal, who had already served five prior prison terms, as well as suffering two prior serious or violent felony strike convictions. The information alleged as strike priors defendant's convictions for robbery in 2002 and 1997. The first strike prior, the 2002 robbery, was based on defendant's participation in an armed robbery in which $17,000 in cash and merchandise was stolen. In 1997, defendant and the victim argued over the impending breakup of their relationship. When the victim tried to leave, defendant took a chain and earrings off of her body and attempted to steal her purse. This resulted in the second alleged strike conviction for robbery. Defendant had not reformed his conduct in any manner, but committed a string of burglaries over a period of several months. He showed no signs of reformation, remorse, moral development, character improvement, or any other traits that would militate in favor of an exercise of leniency, and certainly no extraordinary circumstances that would justify treating him as someone outside the scope of the recidivist sentencing scheme. He continued to harm others without regard for the law. He was precisely the kind of career criminal at whom the three strikes law was directed. The trial court did not abuse its discretion in declining to dismiss one of

10

defendant's strike priors; it also understood the limits of that discretion and acted properly within those limits.

### III. Defendant Is Not Eligible for Mandatory Resentencing Under Penal Code Sections 667, Subdivision (e)(2)(C) and 1170.12, Subdivision (c)(2)(C)

Defendant has raised, by supplemental briefing, an additional issue with respect to his three strikes law sentence: that is, in November 2012, the three strikes law was amended by initiative statute to provide that, when a third strike offense is a nonserious, nonviolent felony, the sentence imposed shall be twice the ordinary sentence for the offense, rather than an indeterminate term of 25 years to life. (Proposition 36, the Three Strikes Reform Act of 2012 [hereafter the Reform Act or the Act]. The Reform Act became effective on Nov. 7, 2012.) Defendant urges that the Reform Act applies to him, as his case was not yet final at the time of the amendment. He therefore requests this court to remand the matter for resentencing under the amended provisions of the three strikes law.

The People respond that the Reform Act provides a distinct mechanism for affording relief to persons sentenced as third strikers under the old law, if the third strike felony is a nonviolent, nonserious offense. The People contend that where, as here, a defendant has been sentenced to an indeterminate term of imprisonment before November 7, 2012, the defendant must "petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her

11

case, to request resentencing in accordance with [Proposition 36]." (Pen. Code, § 1170.126, subd. (b).)

As the contentions of the parties highlight, the Reform Act contains two different avenues of relief.

First, a defendant who is "presently serving" a three strikes sentence under the former version of the three strikes law may (within certain time requirements) petition to have his or her sentence recalled and to be sentenced as a second strike offender, if the current offense is not a serious or violent felony and the person is not otherwise disqualified. The trial court may deny the petition, even if those criteria are met, if the court determines that resentencing would pose an unreasonable risk of danger to public safety. (Pen. Code, § 1170.126, subds. (a)–(g).) Accordingly, under Penal Code section 1170.126, resentencing of defendants "presently serving" a three strikes sentence under the old law is discretionary, even if the defendant meets the objective criteria to qualify for the ameliorated treatment under the Reform Act. (Pen. Code, § 1170.126, subds. (f), (g).)

Second, by contrast, a defendant who is sentenced under the Reform Act's new version of the three strikes law must be sentenced pursuant to paragraph 1 of Penal Code section 667, subdivision (e)—i.e., as though the defendant had only one strike prior—if the current offense is not a serious or violent felony as defined in Penal Code sections 667.5, subdivision (c), or 1192.7, subdivision (c), unless certain disqualifying factors are

pleaded and proven.[1]  That is, it is mandatory in new cases to impose the ameliorated

sentence to third strikers whose third strike qualifies as a nonserious and nonviolent

---

[1]  Penal Code section 667, subdivision (e)(2)(C), provides that second strike sentencing does not apply if the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and 285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 311.11, and Section 314.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

"(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person  who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

13

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

Penal Code section 1170.12, subdivision (c)(2)(C), is substantially to the same effect:

"(C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced pursuant to paragraph (1) of subdivision (c) of this section, unless the prosecution pleads and proves any of the following:

"(i) The current offense is a controlled substance charge, in which an allegation under Section 11370.4 or 11379.8 of the Health and Safety Code was admitted or found true.

"(ii) The current offense is a felony sex offense, defined in subdivision (d) of Section 261.5 or Section 262, or any felony offense that results in mandatory registration as a sex offender pursuant to subdivision (c) of Section 290 except for violations of Sections 266 and

14

285, paragraph (1) of subdivision (b) and subdivision (e) of Section 286, paragraph (1) of subdivision (b) and subdivision (e) of Section 288a, Section 314, and Section 311.11.

"(iii) During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.

"(iv) The defendant suffered a prior conviction, as defined in subdivision (b) of this section, for any of the following serious and/or violent felonies:

"(I) A 'sexually violent offense' as defined by subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286 or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V) Solicitation to commit murder as defined in Section 653f.

"(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

15

felony.  The issue is, which avenue of relief is open to those defendants who were initially charged and sentenced under the old three strikes law, but whose convictions were not yet final at the time the Reform Act became effective?  Do such defendants qualify for mandatory sentencing under the Reform Act, or are they relegated to petitioning for discretionary resentencing?

We conclude that Penal Code sections 667, subdivision (e)(2)(C), and 1170.126, subdivision (c)(2)(C)—the mandatory ameliorated sentence provisions of the Reform Act—do not apply prospectively.  We note that defendant's current offenses—commercial burglaries—do not disqualify him from discretionary second strike treatment under the Reform Act.  In the 2002 strike offense (robbery), one of the participants used a gun to order a store clerk into the back, while others absconded with money and merchandise.  The record before us does not show any enhancement to the 2002 robbery conviction.  Similarly, the record before us does not disclose any enhancement to the 1997 robbery strike conviction.  At least on the surface, defendant's strike priors do not appear to disqualify him from discretionary second strike treatment under the Reform Act.

The *Estrada* rule (*In re Estrada* (1965) 63 Cal.2d 740) is that a statute amended to lessen the punishment for an offense is generally presumed intended by the Legislature to

---

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

16

apply to all judgments not yet final as of the statute's effective date, unless the Legislature clearly indicates the intent that the amendment apply prospectively only. Defendant here was more than 14 months into serving his prison sentence when the Reform Act went into effect. Thus, at that time he was "presently serving" his life sentence. In *People v. Lester* (2013) 220 Cal.App.4th 291 (*Lester*) [Fourth Dist., Div. Two], this court held that, under the rule set forth in *Estrada*, the intent of the voters in passing Proposition 36 was to reserve the mandatory reduction in sentence to *future* felony offenders, but to allow *existing* inmates whose most recent offense was not a serious or violent felony to apply for discretionary resentencing. This is because the voter information guide for the initiative "could not have been more clear in its distinction between the two and nowhere is there a reference to the possibility that some existing inmates would automatically receive a twice-the-base-term sentence merely because their judgments are not yet final." (*Lester* at p. 302) Further, we concluded: "Given the information supplied to the voters, we view Penal Code section 1170.126 *as the functional equivalent of a saving clause*. 'The rule in *Estrada* is not implicated where the Legislature clearly signals its intent to make an amendment prospective, by the inclusion of either an express saving clause or its equivalent . . . .' [Citation.]" (*Lester* at p. 303, italics added and omitted.)

17

We also note that in *People v. Yearwood* (2013) 213 Cal.App.4th 161, 172, 175-176, the first published opinion to consider this question, the Fifth District reached the same conclusion.  Defendant does not benefit from the mandatory provisions of the Reform Act.

DISPOSITION

The judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
                                                                                        P. J.

I concur:


MILLER_____
                                    J.

McKINSTER, J., Concurring and Dissenting

I respectfully concur in part, and dissent in part. I concur with the majority's discussion of the aiding and abetting instructions and the propriety of the trial court's refusal to dismiss defendant's strike priors. However, I disagree with the discussion of the "Three Strikes Reform Act of 2012," section 10 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)) (hereafter the Reform Act or the act). The Reform Act became effective on November 7, 2012. (Pen. Code, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126.)[1]

## I. Section 667, Subdivision (e)(2)(C), Applies to Defendants Whose Judgments Were Not Yet Final on the Effective Date of the Reform Act

I agree that the majority has correctly highlighted the proper questions with respect to applicability of the Reform Act to defendants whose third strike convictions were not yet final when the Reform Act became effective:

"The issue is, which avenue of relief is open to those defendants who were initially charged and sentenced under the old three strikes law, but whose convictions were not yet final at the time the Reform Act became effective? Do such defendants qualify for mandatory sentencing under the Reform Act, or are they relegated to petitioning for discretionary resentencing?" (Maj. opn. *ante*, at p. 15.)

This court has issued conflicting opinions on the same issue: *People v. Lewis* (2013) 216 Cal.App.4th 468 [Fourth Dist. Div. Two], review granted August 14, 2013,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

S211494, holding that third strikers whose convictions were not yet final were eligible for mandatory resentencing, as well as *People v. Lester* (2013) 220 Cal.App.4th 291 [Fourth Dist., Div. Two], holding that third strikers whose convictions were not yet final were not so eligible, but must petition for recall of their sentences under the alternative remedy. The majority here relies on *Lester*, but I adhere to the view that sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C)—the mandatory ameliorated sentence provisions—properly does apply to qualifying three strike defendants whose judgments were not yet final on the effective date of the Reform Act.

As the majority has acknowledged, defendant's current offenses would not disqualify him from second strike treatment under the Reform Act, and his strike priors similarly do not disqualify him from second strike treatment under the Reform Act. I conclude that defendant should be eligible for mandatory resentencing (second strike treatment), under the *Estrada* rule (*In re Estrada* (1965) 63 Cal. 2d 740), because the Reform Act was an ameliorative statute without an express savings clause expressing the clear intent of the Legislature that the ameliorative treatment should not, and could not, constitutionally, be afforded to three strikes defendants whose convictions were not yet final.

Normally, "'when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively.' [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 184.) However, in *In re Estrada*, *supra*, 63 Cal.2d 740, the California Supreme Court created a limited

2

exception to that presumption. The California Supreme Court held that, where a statute has been amended to lessen the punishment for an offense and there is no clear indication of an intent to apply the amendment prospectively only, it must be presumed that the Legislature intended the mitigated punishment to apply to all judgments not yet final as of the effective date of the amended statute. (*Id*. at pp. 744-747.) The court stated, "'A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'" (*Id*. at p. 745.) From this, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply," including those which are not yet final. (*Ibid*.)

The Legislature has never abrogated the *Estrada* rule. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 792, fn. 7.) Additionally, in *People v. Brown* (2012) 54 Cal.4th 314 (Brown), the California Supreme Court reiterated the vitality of the *Estrada* rule, stating that the *Estrada* rule does not "weaken[] or modify[] the default rule of prospective operation codified in section 3, but rather . . . inform[s] the rule's application in a specific context by *articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments*." (*Id*. at p. 324, italics added.)

Unquestionably, section 667, subdivision (e)(2)(C), is an amendment that ameliorates punishment under the three strikes law for those defendants who meet its

3

criteria. The Reform Act does not contain any explicit provision for retroactive or prospective application. It also does not explicitly state what remedy—i.e., section 667, subdivision (e)(2)(C), or section 1170.126—applies to a person in defendant's position. A reviewing court must therefore "look for any other indications" to determine and give effect to the intent of the electorate. (*People v. Nasalga*, *supra*, 12 Cal.4th at p. 794.)

Presumably, the electorate that enacted the Reform Act was aware of the *Estrada* rule and its presumption that the ameliorative effects of the law would apply to all judgments not yet final on appeal. (See *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.) The electorate is also presumed to be aware that a saving clause could have been included to make it explicit, if the intent of the enactment was that its benefits were to be prospective only. No express saving clause was included in the Reform Act; the absence of such language is persuasive evidence that the electorate intended the ameliorative effects of section 667, subdivision (e)(2)(C), to apply to nonfinal judgments.

Construing the Reform Act to apply the *Estrada* rule is consistent with the expressed purposes of the Act. The ballot arguments in support of the Reform Act stated that its purpose was to ensure that "[p]recious financial and law enforcement resources" were not diverted to impose life sentences for some nonviolent offenses, while assuring that violent repeat offenders are effectively punished and not released early. The proponents stated that the act would "help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets" and "help[] ensure that prisons can keep dangerous criminals behind bars for life." (Voter

4

Information Guide, Gen. Elect. (Nov. 6, 2012), argument in favor of Prop. 36, http://voterguide.sos.ca.gov/propositions/36.) An additional purpose was to save taxpayers "$100 million every year" by ending wasteful spending on housing and health care costs for "non-violent Three Strikes inmates." (*Ibid.*) The Reform Act would still ensure adequate punishment of nonviolent repeat offenders, however, by doubling their state prison sentences. Applying section 667, subdivision (e)(2)(C), to nonfinal judgments is consistent with these objectives (monetary savings, reducing the numbers of nonviolent offenders in prison, retaining the greatest punishment for recidivists with current violent and serious felonies, and still maintaining public safety by imposing strict second strike sentences on less dangerous repeat offenders).

The majority's reliance on *People v. Yearwood* (2013) 213 Cal.App.4th 161 is, in my view, misplaced. In *Yearwood*, as in this case, the defendant would have been entitled to second strike sentencing under the Reform Act if he had been sentenced initially after the effective date of the Reform Act. He had already been sentenced and his appeal was pending on the date the act became effective. The court held that even though the judgment was not yet final, Yearwood's only remedy was to petition for recall of his sentence and for resentencing pursuant to section 1170.126. (*Id.* at pp. 167-169.) The *Yearwood* court held, correctly, that the Reform Act does not contain a saving clause or refer to retroactive or prospective application or refer explicitly to persons in Yearwood's position. Nevertheless, the *Yearwood* court considered section 1170.126 to apply unambiguously to all those "presently serving" a three strikes sentence, including

5

those who were doing so as a result of a judgment which was not yet final. (*Yearwood*, at p. 170.)

The *Yearwood* court's reasoning was fallacious, however, because it presumed the answer to the question, which was itself in issue: In light of the *Estrada* presumption and the absence of a saving clause in section 667, subdivision (e)(2)(C), the provision that section 1170.126, subdivision (a), applies "exclusively to persons presently serving" a third strike sentence is ambiguous—does it refer only to prisoners serving sentences which are final, or does it include those whose judgments are not final? In my view, it is not so clear as to qualify as the "functional equivalent" of a saving clause. Rather, retroactive application of section 667, subdivision (e)(2)(C), is more consistent with the proponents' stated objectives of reducing prison overcrowding, reducing the resources expended on third strike offenders whose current and prior offenses are nonviolent and less serious, and enhancing public safety by ensuring that the truly dangerous repeat offenders serve indeterminate life terms. Accordingly, there is a logical basis for inferring that the electorate intended the amendment to apply to nonfinal judgments. (See *People v. Contreras* (Nov. 18, 2013, G047603) __ Cal.App.4th __ [2013 Cal.App. LEXIS 926], criticizing *Yearwood* and *Lester*, and finding the new sentencing scheme applicable to a third striker whose conviction is not final.)

I also find *Lester* problematic and unpersuasive because it suffers from the same analytical fallacy. (*People v. Lester*, *supra*, 220 Cal.App.4th 291, 303-304.)

CONCLUSION

6

I respectfully part company with the majority's conclusion that defendant is not entitled to a reduction in his sentence or resentencing because he retains the ability, under section 1170.126, to petition the trial court to recall his indeterminate sentence and to possibly resentence him to a determinate term. I conclude that in passing the Three Strikes Reform Act of 2012, the electorate intended the mandatory sentencing provisions of sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C), to apply to qualifying defendants whose judgments were not yet final on the effective date of the act. Hence, I would vacate defendant's sentence and remand the matter to the trial court for resentencing.

McKINSTER _____

J.